STATE OF NORTH CAROLINA v. LAURA COTTLE JARMAN

No. COA99-1014

(Filed 3 October 2000)

**1. Sentencing— motion to correct judgment—improper credit for time served under house arrest—clerical error**

The trial court did not improperly consider the State's motion to correct judgment after the trial court mistakenly granted defendant credit against an active sentence for time served under house arrest after the term of court had expired, because: (1) the trial judge did not exercise any judicial discretion or undertake any judicial reasoning when signing the original order providing credit against service of sentence; (2) the State's motion in the case at bar merely alerted the trial court to its error in awarding defendant excess credit for time served; and (3) the trial court's correction of the clerical error resulting from inaccurate information inadvertently provided by the deputy clerk was proper.

**2. Sentencing— pretrial home detention—credit against active sentence not required**

N.C.G.S. § 15-196.1 does not require that defendant receive credit against an active sentence for time spent in pretrial home detention prior to her convictions for embezzlement, because house arrest and/or electric monitoring in a defendant's own home while awaiting trial does not constitute confinement in a state or local institution under the statute.

**3. Constitutional Law— double jeopardy—pretrial home detention—not multiple punishments**

Defendant's pretrial home detention was not punishment for purposes of double jeopardy analysis because: (1) subsequent criminal prosecution of an arrestee who has been regulated but not punished does not expose the arrestee to multiple punishments for the same offense under double jeopardy principles; and (2) the restraints ordered by the trial court in this case were proper regulatory restraints imposed to ensure defendant's presence at the trial and to disable her from committing other offenses.

STATE v. JARMAN

[140 N.C. App. 198 (2000)]

Appeal by defendant from order entered 18 December 1998 by Judge Robert L. Farmer in Wake County Superior Court. Heard in the Court of Appeals 15 August 2000.

*Michael F. Easley, Attorney General, by Christopher W. Brooks, Associate Attorney General, for the State.*

*John T. Hall for defendant-appellant.*

EDMUNDS, Judge.

Defendant Laura Cottle Jarman appeals a judicial order vacating an earlier order that gave her credit for time served under electronic house arrest prior to conviction. We affirm.

On 23 February 1998, defendant was arrested for obtaining property by false pretenses in violation of N.C. Gen. Stat. § 14-100 (1993). Her bond initially was set at $500,000, but later was reduced to $50,000 on condition that she be placed under house arrest and electronic surveillance pending disposition of her case. On 27 February 1998, she was released into the monitoring program, and on 18 September 1998, she pled guilty to eight counts of embezzlement. Five counts, which fell under the Structured Sentencing Act, were consolidated for sentencing, and the court imposed an active term of five to six months. The remaining three counts, which fell under the Fair Sentencing Act, also were consolidated for sentencing, and the court imposed a term of nine years. For the latter three counts, the court suspended imposition of the sentence and placed defendant on supervised probation for five years.

Thereafter, defendant was transported to the North Carolina Correctional Institution for Women. She stated during an orientation session that she had not received credit for time served prior to her conviction, and in fact both judgment forms prepared after her sentencing state that she was to be given credit of "0 days spent in confinement prior to the date of [] Judgment." Accordingly, prison personnel prepared, and defendant signed, a Request for Pre-Trial Credit form, which was forwarded to the office of the Wake County Clerk of Superior Court. Although the deputy clerk who received the form had no independent recollection of the incident, she apparently contacted the Wake County Sheriff's Department to determine whether defendant had spent time in custody prior to sentencing. Based on the information she received, the deputy clerk prepared an "Order Providing Credit Against Service of Sentence" crediting

defendant with 211 days for "time spent in custody awaiting trial." This credit included the time defendant spent under house arrest prior to trial. The trial court signed the order on 6 October 1998, and defendant was released shortly thereafter because the time credited exceeded her maximum active sentence.

On or about 30 October 1998, the Wake County District Attorney's Office became aware that defendant was no longer incarcerated. After investigating the circumstances of her release, the district attorney on 5 November 1998 filed with the court a document titled "Motion To Correct Judgment," asserting that defendant was not eligible for credit for time spent under house arrest and electronic monitoring. On 9 December 1998, the trial court held a hearing on the motion and, on 18 December 1998, entered an order in which it vacated its earlier order, gave defendant credit for time actually spent in Wake County jail, struck credit for time spent in home detention, and ordered defendant to return to the Department of Corrections to serve the remainder of her active sentence. In its order, the trial court noted that the State's motion was actually a motion to correct the 6 October 1998 order awarding defendant credit spent in pretrial custody, rather than a motion to correct judgment. The court additionally indicated that when it signed the earlier order, it was unaware that the number of days credited to defendant in the order prepared by the clerk included time spent under house arrest and electronic monitoring. Upon defendant's appeal, the order returning defendant to custody was stayed.

We note initially that the State has filed a motion to dismiss defendant's appeal, asserting that, pursuant to N.C. Gen. Stat. § 15A-1444 (1997), defendant has no statutory right of appeal. Section 15A-1444(a1) and (a2) sets out the circumstances under which a defendant may appeal as a matter of right:

(a1) A defendant who has been found guilty, or entered a plea of guilty or no contest to a felony, is entitled to appeal as a matter of right the issue of whether his or her sentence is supported by evidence introduced at the trial and sentencing hearing only if the minimum sentence of imprisonment does not fall within the presumptive range for the defendant's prior record or conviction level and class of offense. Otherwise, the defendant is not entitled to appeal this issue as a matter of right but may petition the appellate division for review of this issue by writ of certiorari.

(a2)  A defendant who has entered a plea of guilty or no contest to a felony or misdemeanor in superior court is entitled to appeal as a matter of right the issue of whether the sentence imposed:

(1)  Results from an incorrect finding of the defendant's prior record level under G.S. 15A-1340.14 or the defendant's prior conviction level under G.S. 15A-1340.21;

(2)  Contains a type of sentence disposition that is not authorized by G.S. 15A-1340.17 or G.S. 15A-1340.23 for the defendant's class of offense and prior record or conviction level; or

(3)  Contains a term of imprisonment that is for a duration not authorized by G.S. 15A-1340.17 or G.S. 15A-1340.23 for the defendant's class of offense and prior record or conviction level.

N.C. Gen. Stat. § 15A-1444(a1), (a2). Although we agree with the State that none of these conditions apply, in light of the issues presented, we elect to treat defendant's appeal as a petition for writ of certiorari and grant that petition. See N.C. R. App. P. 21; State v. Linemann, 135 N.C. App. 734, 522 S.E.2d 781 (1999).

As a second preliminary matter, we observe that the copy of the trial court's 18 December 1998 order contained in the record does not bear the clerk's stamp showing the filing date in accordance with N.C. R. App. P. 9(b)(3). However, because neither party has raised the absence of the stamp as an issue, and because the course of the proceedings is undisputed, we elect to suspend the requirement for the stamp pursuant to the discretionary authority accorded us by N.C. R. App. P. 2.

I.

[1] Defendant first argues that the trial court improperly considered the State's "Motion To Correct Judgment." She contends that the exclusive means of obtaining relief from "errors committed in criminal trials and proceedings and other post-trial relief" are set forth in N.C. Gen. Stat. § 15A-1401 (1999) and that the State's motion was invalid because it was neither a motion for appropriate relief nor an appeal. Defendant additionally argues that, pursuant to N.C. Gen. Stat. § 15A-1416 (1999), the time for filing such a motion had expired when the court stripped defendant of jail credit for her time in home

STATE v. JARMAN

[140 N.C. App. 198 (2000)]

detention. The State responds that "[t]he trial court had the inherent authority to vacate its earlier order *ex mero motu*" and that its motion was merely a means of bringing to the trial court's attention an error in the 6 October 1998 order. We assume for the purposes of the following analysis that the court's granting of credit for time served under house arrest was a mistake. A detailed consideration of this issue may be found in Part II, below.

Although "a court of record has the inherent power to make its records speak the truth and, to that end, to amend its records to correct clerical mistakes or supply defects or omissions therein," *State v. Davis*, 123 N.C. App. 240, 242-43, 472 S.E.2d 392, 393 (1996) (citations omitted), it "cannot, under the guise of an amendment of its records, correct a judicial error," *id.* at 243, 472 S.E.2d at 394 (citation omitted). Accordingly, we must determine whether the court's error in granting defendant credit for time served under house arrest was judicial or merely clerical.

"Clerical error" has been defined recently as: "An error resulting from a minor mistake or inadvertence, esp. in writing or copying something on the record, and not from judicial reasoning or determination." Black's Law Dictionary 563 (7th ed. 1999). Although this definition has not been adopted by our courts, and we do not adopt it now, the concept of "judicial reasoning or determination" as a component of a judicial action has been implicitly recognized in numerous appellate decisions.[1] In reviewing criminal convictions, our courts have found harmless clerical errors to include the inadvertent checking of a box finding an aggravating factor on a judgment form, *see State v. Gell*, 351 N.C. 192, 524 S.E.2d 332 (2000); reference in a bill of particulars to a wrong charge when the indictment indicated the proper charge, *see State v. Parker*, 119 N.C. App. 328, 459 S.E.2d 9 (1995); submission to the jury of a range of drug trafficking amounts differing from the range indicated in the indictment, *see State v. McCoy*, 105 N.C. App. 686, 414 S.E.2d 392 (1992); judgment mistakenly stating that prison term was imposed pursuant to plea agreement, *see State v. Leonard*, 87 N.C. App. 448, 361 S.E.2d 397 (1987); judgment erroneously stating conviction of wrong crime, *see State v. Jamerson*, 64 N.C. App. 301, 307 S.E.2d 436 (1983) (ordering new trial on other grounds, but indicating judgment needed to be corrected to show proper convictions).

1. This Court's holding in *Ammons v. County of Wake*, 127 N.C. App. 426, 490 S.E.2d 569 (1997) that the term "clerical error" applied only to transcription errors was specifically limited to the interpretation of the term as used in N.C. Gen. Stat. § 105-381 (1995) (Taxpayer's remedies).

Where there has been uncertainty in whether an error was "clerical," the appellate courts have opted to "err on the side of caution and resolve [the discrepancy] in the defendant's favor." *State v. Morston*, 336 N.C. 381, 410, 445 S.E.2d 1, 17 (1994). However, in the case at bar, the record demonstrates that the trial judge did not exercise any judicial discretion or undertake any judicial reasoning when signing the original "Order Providing Credit Against Service Of Sentence." The deputy clerk who received defendant's request for credit for time served "in Wake [County]" prepared an order for the judge's signature by filling in the blanks on a standard AOC form, using information provided by the sheriff's records. The completed but unsigned order was presented to the judge, who was required to give defendant credit for "time spent in custody pending trial." N.C. Gen. Stat. § 15-196.1 (1999). Therefore, the judge's action in signing the order giving defendant credit to which he believed she was legally entitled was a mechanical and routine, though mistaken, application of a statutory mandate. Accordingly, we hold that the trial court's order of 18 December 1998 was the correction of a clerical error.

Consequently, the trial court had the power to make the correction even though the term of court had expired.

It is universally recognized that a court of record has the inherent power and duty to make its records speak the truth. It has the power to amend its records, correct the mistakes of its clerk or other officers of the court, or to supply defects or omissions in the record, and no lapse of time will debar the court of the power to discharge this duty.

*State v. Cannon*, 244 N.C. 399, 403, 94 S.E.2d 339, 342 (1956) (citations omitted).

This Court addressed a somewhat analogous situation in *State v. Branch*, 134 N.C. App. 637, 518 S.E.2d 213 (1999), in which the defendant pled guilty to two sets of offenses, the first committed on 19 September 1994, and the second on 4 October 1994. All offenses were combined, and the defendant was sentenced to twelve to fifteen months imprisonment pursuant to the Structured Sentencing Act. Thereafter, the Department of Corrections notified the trial court that offenses committed prior to 1 October 1994 could not be combined with offenses committed after that date. Accordingly, the defendant was resentenced in May 1995 to twelve to fifteen months for the October offenses pursuant to the Structured Sentencing Act and ten

years for the September offenses pursuant to the Fair Sentencing Act. The defendant filed a motion for appropriate relief, which was denied. The defendant appealed, contending that "the letter from the Department of Corrections alerting the trial court of the erroneous sentence was, in essence, a motion for appropriate relief, and this motion was not filed within the statutory period of 10 days." *Id.* at 640, 518 S.E.2d at 215 (citation omitted). We disagreed, noting that the letter was not in the statutory form of a motion for relief, and concluded that:

> This letter was not a motion for appropriate relief. It was a form letter, alerting the trial court to its error in applying the law as to the sentence. Upon learning of its error the trial court vacated its previous unlawful sentence and imposed a sentence using the appropriate applicable law.

*Id.* at 641, 518 S.E.2d at 215-16.

Similarly, the State's motion in the case at bar alerted the trial court to its error in awarding defendant excess credit for time served. The court's correction of the clerical error resulting from inaccurate information inadvertently provided by the deputy clerk was proper. This assignment of error is overruled.

## II.

Defendant next argues that the trial court's December order revoking her credit for time spent under house arrest prior to her entry of plea violated her constitutional right against double jeopardy. She asserts that house arrest as a condition of bond constituted "confinement" under N.C. Gen. Stat. § 15-196.1 and that the trial court was required to reduce her active sentence by time spent in this pretrial custody. The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The United States Supreme Court has interpreted this guarantee to "protect[] against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 23 L. Ed. 2d 656, 665 (1969) (citations omitted), *overruled in part on other grounds* by *Alabama v. Smith*, 490 U.S. 794, 104 L. Ed. 2d 865 (1989). This protection against double jeopardy is applicable to the states through the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784, 23 L. Ed. 2d 707 (1969), and our Supreme Court "has interpreted the language of the law of the land clause of our state Constitution as guaranteeing the

common law doctrine of former jeopardy," *State v. Brunson*, 327 N.C. 244, 247, 393 S.E.2d 860, 863 (1990).

**[2]** We first consider whether the applicable statute requires that defendant receive credit for time spent in pretrial home detention. Section 15-196.1 provides:

> The minimum and maximum term of a sentence shall be credited with and diminished by the total amount of time a defendant has spent, *committed to or in confinement in any State or local correctional, mental or other institution* as a result of the charge that culminated in the sentence. The credit provided shall be calculated from the date custody under the charge commenced and shall include credit for all time spent *in custody* pending trial, trial de novo, appeal, retrial, or pending parole, probation, or post-release supervision revocation hearing: Provided, however, the credit available herein shall not include any time that is credited on the term of a previously imposed sentence to which a defendant is subject.

N.C. Gen. Stat. § 15-196.1 (emphasis added). Whether house arrest and electronic monitoring constitute "confinement" as contemplated by this statute is an issue of first impression for this state.

> Criminal statutes must be strictly construed. But, while a criminal statute must be strictly construed, the courts must nevertheless construe it with regard to the evil which it is intended to suppress. The intent of the legislature controls the interpretation of a statute. When the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein.

*In re Banks*, 295 N.C. 236, 239, 244 S.E.2d 386, 388-89 (1978) (citations omitted). The first sentence of section 15-196.1 expressly requires that a defendant receive credit only for time "spent, committed to or in confinement *in any State or local correctional, mental or other institution.*" N.C. Gen. Stat. § 15-196.1 (emphasis added). Because the requirements for receiving credit under the statute are unambiguous, it is apparent from reading the statute as a whole that the second sentence is a clarification of the first, using the term "in custody" as shorthand to avoid repeating the specific conditions necessary for the credit to be applied while ensuring that defendants

incarcerated at various stages of trial receive due credit. In other words, the second sentence, referring to "the credit" defined in the first sentence, does not extend a greater benefit than that provided in the first sentence. Accordingly, we hold that house arrest (whether or not accompanied by electronic monitoring) in a defendant's own home while awaiting trial does not constitute confinement in a state or local institution and does not qualify as time that can be credited against a defendant's sentence pursuant to section 15-196.1.

Although defendant alerts us to N.C. Gen. Stat. § 20-179 (1999), which formerly provided that a defendant convicted of impaired driving could receive a suspended sentence if special probation including home detention were imposed, this statute does not affect the preceding analysis. We do not believe that a superseded statute limited to a motor vehicle offense controls the case at bar. In addition, as defendant also properly points out, section 20-179 no longer carries that provision. We interpret the General Assembly's action in removing home detention as a sentencing option for impaired driving to be an acknowledgment that home detention is a lesser sanction than incarceration in a state institution.

Other courts construing statutes referring to pretrial custody or detention have reached the same conclusion. *See Fernandez v. State*, 627 So. 2d 1 (Fla. Ct. App. 1993) (defendant not entitled to credit for time served under house arrest, interpreting a statute that gave a defendant credit for "time spent in the county jail" prior to sentencing); *State v. Climer*, 896 P.2d 346 (Idaho Ct. App. 1995) ("The majority of courts interpreting whether the term house arrest constitutes being 'in custody' have held that it does not," interpreting a statute that gave a defendant credit for time spent "in custody" prior to sentencing); *State v. Faulkner*, 657 N.E.2d 602 (Ohio Ct. App. 1995) (interpreting a statute that gave a defendant credit for time spent "incarcerated" prior to sentencing and holding that court-imposed house arrest was not "detention," but rather a "constraint incidental to release on bail" for which no credit is awarded); *State v. Pettis*, 441 N.W.2d 247 (Wis. Ct. App. 1989) (interpreting a statute that gave a defendant credit for time spent "in custody" prior to sentencing and holding that home detention as a condition of bail does not render defendant in custody for purposes of receiving sentencing credit). Similarly, federal courts have denied credit for time spent on house arrest. *See, e.g.*, *U.S. v. Wickman*, 955 F.2d 592 (8th Cir. 1992); *U.S. v. Becak*, 954 F.2d 386 (6th Cir. 1992); *U.S. v. Insley*, 927 F.2d 185 (4th Cir. 1991) (all interpreting the federal statute, which gives a

defendant credit for time spent in "official detention" prior to sentencing).

Because the North Carolina statute is unambiguous, we need not undertake the analysis employed by some other jurisdictions, which compare conditions encountered in jail with the more benign experience of home detention, to conclude that the latter was insufficiently restrictive to qualify for credit. *See People v. Ramos*, 561 N.E.2d 643 (Ill. 1990); *Bailey v. State*, 734 A.2d 684 (Md. 1999); *Bates v. Missouri Dept. of Corrections*, 986 S.W.2d 486 (Mo. Ct. App. 1999); *Com. v. Shartle*, 652 A.2d 874 (Pa. Super. Ct. 1995).

In contrast, several states that have held time in pretrial home detention is to be credited toward time served on a sentence have done so because the applicable statutes specifically awarded credit for time spent in "home detention," *see State v. Speaks*, 829 P.2d 1096 (Wash. 1992), or in a "home detention program," *see People v. LaPaille*, 19 Cal. Rptr. 2d 390 (Cal. Ct. App. 1993). The North Carolina statute contains no such provision.

[3] Having concluded that a defendant is not entitled under N.C. Gen. Stat. § 15-196.1 to credit against an active sentence for time spent in house arrest, we next turn to defendant's constitutional argument. She contends that her pretrial home detention was punishment for purposes of double jeopardy analysis. However, "the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." *United States v. Salerno*, 481 U.S. 739, 746, 95 L. Ed. 2d 697, 708 (1987) (citation omitted). N.C. Gen. Stat. § 15A-534 (1999) provides a number of reasons for limiting the freedom of an individual charged with a crime, including ensuring the safety of others, preventing flight by the defendant, and preserving the integrity of the case. The United States Supreme Court has "recognized a distinction between punitive measures that may not constitutionally be imposed prior to a determination of guilt and regulatory restraints that may." *Bell v. Wolfish*, 441 U.S. 520, 537, 60 L. Ed. 2d 447, 467 (1979). Accordingly, our Supreme Court has held that "[s]ubsequent criminal prosecution of an arrestee who has been regulated, but not punished, does not expose the arrestee to 'multiple punishments' for the same offense under established double-jeopardy principles." *State v. Thompson*, 349 N.C. 483, 496, 508 S.E.2d 277, 285 (1998). Because the restraints ordered by the trial court upon defendant prior to trial were proper regulatory restraints imposed to ensure defendant's presence at the trial and to disable her from committing

other offenses, defendant's constitutional argument fails. This assignment of error is overruled.

Affirmed.

Judges GREENE and SMITH concur.