**STATE v. BROWN**

[222 N.C. App. 738 (2012)]

STATE OF NORTH CAROLINA v. SILVINO ENRIQUE BROWN, JR.

No. COA12-110

(Filed 4 September 2012)

### 1. Probation and Parole—written statement of conditions— failure to participate in intake process

The trial court did not err in a probation revocation case by revoking defendant's probation even though he never received a written statement containing the conditions of his probation, as required by N.C.G.S. § 15A-1343(c). Because defendant was aware that he was required to report to the probation office for processing, written confirmation of this requirement was not necessary. Had defendant reported and participated fully with the process, defendant would have received a written statement explaining all the continuing conditions of his probation.

### 2. Probation and Parole—written statement of conditions— contained in judgments

Defendant's argument that the trial court erred in a probation revocation case by revoking his probation even though he never received a written statement containing the conditions of his probation, as required by N.C.G.S. § 15A-1343(c), was overruled. The judgments entered in this matter included many of the terms of defendant's probation and the record failed to show that defendant was not provided with copies of the judgments.

### 3. Probation and Parole—assignment of parole officer— failure to complete intake process

Defendant's argument in a probation revocation case that he could not have violated any conditions of his probation because he was not assigned a probation officer was overruled. Because defendant left in the middle of the probation intake procedure, he could not complain that he did not receive that which he prevented the State from giving him.

Appeal by Defendant from judgments entered 25 August 2011 by Judge Elaine M. Bushfan in Superior Court, Alamance County. Heard in the Court of Appeals 14 August 2012.

*Attorney General Roy Cooper, by Assistant Attorney General David Leon Gore, III, for the State.*

*Guy J. Loranger for Defendant-Appellant.*

McGEE, Judge.

Silvino Enrique Brown, Jr. (Defendant) was indicted on 10 August 2009 on nine felony counts related to the possession, sale, and trafficking of cocaine. This matter was brought to trial, but a mistrial was declared on 22 April 2010 due to jury misconduct. The State and Defendant entered into a plea agreement on 26 July 2010, under which Defendant agreed to plead guilty to three counts of attempting to traffic in cocaine in return for the dismissal of the remaining six charges. Defendant agreed to accept three consecutive sentences of fifteen to eighteen months each, to be suspended, and Defendant would be placed on probation. Defendant's probation was to be transferred to Virginia. The trial court accepted the plea agreement and, in accordance with the agreement, judgments were entered on 26 July 2010. The judgments included numerous conditions of probation.

A probation violation report was filed on 11 August 2011, alleging Defendant had violated the following condition of probation:

"Report as direct[ed] by the [trial court] or the probation officer to the officer at reasonable times and places . . ." in that [Defendant] was placed on supervised probation by the [trial court] on 07-26-10. [Defendant] left the court house without permission and failed to be processed for probation. A bench warrant was taken out and [Defendant] was arrested in the Commonwealth of Virginia and extradited to North Carolina. [Defendant] was an absconder based on the fact that [Defendant] avoided supervision.

A probation revocation hearing was held on 25 August 2011. Both Assistant District Attorney Eugene T. Morris, Jr. (Morris) and Defendant testified at the hearing. Morris testified that before accepting the plea agreement, the trial court went over the conditions of probation thoroughly with Defendant. Defendant testified that the trial court did discuss the plea agreement with him, at least generally, but Defendant testified that he did not remember the trial court addressing the specifics of the agreement. Defendant testified that he knew he was supposed to report to the probation office, which was located downstairs from the courtroom and that, shortly after judg-

ment was entered, he did report to the probation office. Defendant testified he gave some information to a man at the probation office who filled out some forms. Defendant was then informed that he would have to pay a $180.00 fee to have his probation transferred to Virginia. Defendant was upset because he did not have the money at that time and he wanted to get back to Virginia. Morris testified that he was told of this conversation and that Defendant was also told that it would take one to two weeks for the transfer to occur.

Defendant left the probation office before the intake process was complete, apparently without telling anyone he was leaving. Because Defendant left, he was not assigned a probation officer, no probation official discussed the other conditions of Defendant's probation with him, and Defendant was not given a written explanation of the conditions of his probation. When it was discovered that Defendant had left without completing the intake process, the trial court issued a warrant for Defendant's arrest.

Defendant left North Carolina for Virginia. Defendant was in Virginia for approximately one year, during which time Defendant made no attempt to contact probation officials in either North Carolina or Virginia. Defendant was arrested in Virginia on an unrelated charge, whereupon Virginia officials discovered the arrest warrant from North Carolina. Defendant was arrested on the North Carolina warrant and was extradited to North Carolina.

A probation revocation hearing was conducted on 25 August 2011. The State argued that Defendant had absconded and was in violation of the conditions of his probation. Defendant argued that he did not realize he was not allowed to leave the probation office when he did so, and that he also did not know he was not supposed to leave North Carolina. Defendant further argued that he did not really know the conditions of his probation; that he assumed North Carolina probation officials would contact him and tell him what he needed to do; and that because he never received any written explanation of his probation conditions, he could not be found to have violated them. Defendant also argued that he could not be found to have violated probation because no probation officer was ever assigned him.

The trial court found that Defendant was in violation of his probation, and ordered that Defendant's probation be revoked and his sentences activated. Defendant appeals.

I.

The issues on appeal are whether: (1) the trial court erred in revoking Defendant's probation because Defendant never received written notice of the conditions of his probation; and (2) the trial court erred in revoking Defendant's probation when Defendant had not been assigned a probation officer.

II.

[1] In his first argument, Defendant contends the trial court erred in revoking his probation because he never received a written statement containing the conditions of his probation, as required by N.C. Gen. Stat. § 15A-1343(c). We disagree.

Defendant's argument is based upon N.C. Gen. Stat. § 15A-1343(c), which states:

Statement of Conditions.—A defendant released on supervised probation must be given a written statement explicitly setting forth the conditions on which he is being released. If any modification of the terms of that probation is subsequently made, he must be given a written statement setting forth the modifications.

N.C. Gen. Stat. § 15A-1343(c) (2011). This Court has held that "[o]ral notice to [a] defendant of his conditions of probation is not a satisfactory substitute for the written statement required by statute." *State v. Lambert,* 146 N.C. App. 360, 369, 553 S.E.2d 71, 78 (2001) (citation omitted).

When the violation was a defendant's failure to initially report to a probation official for processing, however, this Court has taken a different approach. In *State v. Bouknight,* an unpublished opinion, this Court held that when the defendant received actual notice that she was required to report to a probation official for processing, her failure to report constituted a violation even though the record did not show that she had been given written notice of this condition. *State v. Bouknight,* ____ N.C. App. ____, 716 S.E.2d 87, 2011 WL 3891023, *3-4 (2011). We agree with the reasoning in *Bouknight* and hold that, because Defendant was aware that he was required to report to the probation office for processing, written confirmation of this requirement was not necessary. Defendant's obligation was not simply to report, but to report and participate fully with the process. Had Defendant done so, Defendant would have received a written statement explaining all the continuing conditions of his probation. This obligation imposed no unfair burden upon Defendant.

[2] Defendant willingly entered into a plea agreement as a means of disposing of his charges. There is no dispute that Defendant knew he was entering into the plea agreement—Defendant argues only that he does not remember what the trial court told him regarding the provisions of the agreement and that he did not receive a written copy of the terms of the agreement. The judgments entered in this matter included the length of Defendant's sentences, that the sentences were suspended, and that Defendant would be placed on special supervised probation. The judgments also stated the terms of Defendant's probation, including a requirement that Defendant provide a DNA sample, pay various fees and charges amounting to $5,329.00, and abide by both regular and special conditions of probation. Included in those conditions was the following:

> Remain within the jurisdiction of the Court unless granted written permission to leave by the Court or the probation officer. . . . Report as directed by the Court or the probation officer to the officer at reasonable times and places and in a reasonable manner, . . . answer all reasonable inquiries by the officer and obtain prior approval from the officer, and notify the officer of, any change in address or employment.

Included in the judgments was the requirement that Defendant serve "an active term of 3 . . . days . . . in the custody of . . . [the] Sheriff[.]" Defendant was given credit for the three days he had already spent in confinement. Defendant was also required to: "Report to a probation officer in the State of North Carolina within seventy-two (72) hours of [Defendant's] discharge from the active term of imprisonment."

Because those conditions were written on the judgments, if Defendant was provided with the judgments then he was provided written confirmation of these conditions as required by N.C. Gen. Stat. § 15A-1343(c). Defendant argues:

> Even though the record contains judgments listing [Defendant's] probation conditions, the record contains no evidence that he was ever served with these judgments. Thus, Mr. Brown's probation conditions, including the N.C. Gen. Stat. § 15A-1343(b)(3) reporting condition that he allegedly violated, were invalid as prescribed the trial court on 26 July 2010.

The record also fails to show that Defendant was *not* provided with copies of the judgments. The judgments contained written conditions of probation. "Where the record is silent upon a particular point, the

action of the trial court will be presumed correct." *State v. James*, 321 N.C. 676, 686, 365 S.E.2d 579, 585 (1988) (citation omitted). For this reason alone, Defendant's argument fails.

Defendant's substantive argument also fails. Defendant argues in his brief that "[b]ecause the trial court failed to comply with the written notice mandate of N.C. Gen. Stat. § 15A-1343(c)," Defendant was prejudiced. Again, Defendant does not show that the trial court failed to comply with N.C.G.S. § 15A-1343(c). Assuming *arguendo* Defendant was not provided with the judgments, we hold that the trial court did not err in revoking Defendant's probation. The following colloquy occurred at the revocation hearing:

[The State] And no one told you, you were free to leave during the processing period, did they?

[Defendant] Umm, no, I know I was, I know I wasn't free to leave. I know, you know.

Q And you left anyways?

A To go downstairs.

Q And when you went downstairs, no one told you, you were free to leave down there either?

A Nobody told me anything down there.

. . . .

Q So when you walked out of the courtroom, what was the understanding of your probation?

A I'm supposed to go in, report to the probation officer.

Q Okay. And when you reported to that probation office, you didn't like what they had to tell you. Isn't that correct?

A I wasn't overjoyed, but it wasn't, you know, I wasn't angry.

Q Which probation officer did they assign to you?

A They didn't get to do that.

Q Why not?

A I don't know.

Q Because you left. Is that right?

A Umm, the man was talking like, you know, he was doing my paperwork.

Q Okay. And so when you left, what were the last words that you had with that, with the person who was processing you?

A Umm, he, he was telling me about, he had stepped off for a minute, you know, and was doing something.

Q Okay. Well, you went back to Virginia, right?

A Yeah.

. . . .

Q All right. Did you know you were wanted in North Carolina for essentially absconding from your probation?

A I mean, you know, there wasn't nothing I could say. There wasn't, there wasn't nothing to my knowledge about that. It's always in the back of my mind.

Q It was always in the back of your mind?

A Yeah, that may be, you know.

Defendant's argument, at its core, is that, because Defendant did not allow officials in the probation office to complete processing before he decided to leave and thus did not afford the probation office the opportunity to provide Defendant with a "written statement of [his probation] conditions[,]" Defendant should not be held accountable for leaving the probation office before probation officials had the opportunity to finish processing and provide written documentation. Were we to follow Defendant's reasoning, any defendant who simply refused to report to a probation office for processing would never be accountable for violations of the conditions of probation set in lieu of an active sentence. We do not believe this absurd outcome is contemplated in N.C.G.S. § 15A-1343(c).

Defendant's own testimony contradicts some of his argument on appeal. Defendant testified on direct that he went to the probation office immediately following sentencing because "they were supposed to process me." Defendant was clearly aware that he needed to report for processing. Defendant testified that, while at the probation office, he was told that in order for his probation to be transferred to Virginia, he would have to pay $180.00 in fees. Defendant told the probation official that he would not be able to pay that fee. Defendant

knew that he could not leave North Carolina without permission, and Defendant knew that he did not have permission to leave.

Defendant's counsel made the following argument to the trial court:

[Defendant's counsel]: That's all for us, Judge. Judge, a very unusual case. We don't have that many transfers. I mean it happens regularly, but it's not, not every day. He comes in, takes a plea agreement. He's ordered by the Judge to do several things. He doesn't remember exactly what they are, but they're in the judgment. I mean, he was ordered to do certain things. *One was to get processed by probation. I think you can take [the ADA's] word for that. I think you can take judicial notice of the judgment, which should say the same thing.*

He left here. It's clear that he went down to probation, because [the ADA] talked to the probation officers who said that they had talked to him about transferring to [Virginia]. . . . . He relates that they told him that he had to pay a fee to move to [Virginia], and that he was supposed to be processed in [Virginia], which is where he lived at the time, where he still lives, and where he's lived the whole time as far as we can tell. He did that. . . . . He clearly didn't abscond because he wasn't processed. So I don't think that's a violation. The only question is whether or not he left without permission and failed to be processed. Well, he definitely went down there. I mean there's no doubt about that. Everybody agrees on that. The question was whether he left without permis-. sion. I mean he seems to think that he was there. He talked to them. Then they left him. He come around for about ten minutes, and then he left. That was his testimony. We don't know who in probation was there. We don't have anybody to talk to, to get verification. And so really, Judge, I don't think that the State can prove even by the lower preponderance of the evidence standard that he's violated on this violation. [Emphasis added.].

Prior opinions of this Court, such as *Lambert*, stand for the proposition that a defendant cannot be held to have violated a condition of probation when there is no evidence that the defendant was fully apprised of the condition. *See Lambert*, 146 N.C. App. at 368-69, 553 S.E.2d at 78. For every condition, except for one, this means a defendant must be given written confirmation of the conditions. This is completely reasonable, as a defendant might easily forget, for example, the exact amount of restitution owed, or where he is to report for

substance abuse assessment. When a defendant is placed on supervised probation, however, he is unlikely to forget that he has been placed on supervised probation, and he is unlikely to forget that he needs to report to be processed into the system. If a defendant fails to report, or fails to complete the intake process, he may, as did Defendant in the present case, explain his failure to the trial court. It is in the trial court's discretion, however, whether to revoke probation in light of the violation. In the present case, the trial court was not swayed by Defendant's explanation and decided to revoke Defendant's probation. The trial court's ruling was discretionary and we hold that the trial court did not abuse that discretion. *State v. Crowder*, ____ N.C. App. ____, ____, 704 S.E.2d 13, 15 (2010).

III.

**[3]** Defendant further argues that he could not have violated any conditions of his probation because "he was not assigned a probation officer." We disagree.

Defendant was not assigned a probation officer because Defendant left in the middle of the probation intake procedure. Defendant was not assigned a probation officer for the same reason that Defendant did not receive a written explanation of his conditions of probation. Defendant did not need, and indeed could not have been assigned, a probation officer at that stage of probation—the initial intake stage. Having abandoned the process and left the State, Defendant cannot now complain that he did not receive that which he prevented the State from giving him. This argument is without merit.

Affirmed.

Judges STEELMAN and ERVIN concur.