An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-337

NORTH CAROLINA COURT OF APPEALS

Filed: 4 February 2014

STATE OF NORTH CAROLINA

v.                                      Hertford County
                                        No. 10 CRS 51612
QUAYSHAUN WYNN,
        Defendant.


Appeal by defendant from judgment entered 10 December 2012 by Judge Cy A. Grant in Hertford County Superior Court. Heard in the Court of Appeals 9 September 2013.

> *Attorney General Roy Cooper, by Assistant Attorney General Carolyn McLain and Assistant Attorney General Kimberly N. Callahan, for the State.*

> *Yoder Law PLLC, by Jason Christopher Yoder, for defendant-appellant.*


GEER, Judge.


Defendant Quayshaun Wynn appeals from the trial court's judgment revoking his probation and activating his suspended sentence for conspiracy to commit robbery with a dangerous weapon. On appeal, defendant primarily argues that the trial court revoked his probation based upon an absconding condition provided for in the Justice Reinvestment Act ("JRA") that,

because of the effective date of the applicable JRA provision, did not apply to defendant's probation.

We hold that even though the absconding provision of the JRA did not apply to defendant's probation, the trial court properly revoked defendant's probation based on his violation of the probationary conditions that defendant not (1) change residences without prior approval or (2) leave the jurisdiction of the trial court without permission. Consequently, we affirm the trial court's judgment, but remand for correction of a clerical error.

## Facts

On 8 February 2011, defendant pled guilty to conspiracy to commit robbery with a dangerous weapon in Hertford County, North Carolina. The trial court sentenced defendant to a presumptive-range term of 20 to 33 months imprisonment, but suspended the sentence and ordered defendant to serve six months active imprisonment followed by 24 months of supervised probation. The court ordered as a condition of probation that defendant report as directed to the "Day Reporting Center" for 24 months.

On 7 March 2012, defendant's probation officer, Todd Sellers, filed a verified probation violation report in Hertford County alleging that defendant willfully violated the conditions of his probation by (1) being $400.00 in arrears in payments on

his case and (2) failing to report as directed to the Day Reporting Center since October 2011. In addition, the report alleged that defendant also committed the following probation violations:

> 3. Condition of Probation ". . . obtain prior approval from the officer for, and notify the officer of, any change in address . . ." in that
> ON OR ABOUT 11/15/2011 OFFENDER LEFT HIS PLACE OF RESIDENCE AT 104 WATFORD PARK LN. AND FAILED TO MAKE IS [sic] WHEREABOUTS KNOWN.

> 4. Condition of Probation "Remain within the jurisdiction of the Court unless granted written permission to leave by the Court or the probation officer" in that
> OFFENDER ABSCONDED SUPERVISION AND HAS FAILED TO REPORT OR GIVE A VALID ADDRESS TO HIS PROBATION OFFICER SINCE 11/15/12.

At a 10 December 2012 hearing on the probation violation report, defendant admitted the existence of the first two violations alleged in the report but denied the existence of the third and fourth violations. The probation officer who filed the report, Mr. Sellers, did not testify at the hearing because he had moved out of Hertford County. It appears, however, from the transcript, that defendant's supervision was transferred to Bertie County at some point.

In place of Mr. Sellers, the State presented the testimony of Dessie Outlaw, a probation officer in Hertford County to whom

defendant was assigned following his arrest in Plymouth, North Carolina on a warrant for absconding from his probation. Ms. Outlaw testified that when defendant was discovered in Plymouth, he was supposed to be living at 104 Watford Park Lane in Colerain, North Carolina, but he was not living at that address. Ms. Outlaw testified that other than this basic information, she only knew the information on the violation report since defendant had not been assigned to her prior to being arrested in Plymouth.

Defendant testified at the hearing that in April 2011, Mr. Sellers gave defendant permission to move to Nags Head. Defendant admitted that his last contact with Mr. Sellers was in April 2011, although defendant claimed he tried to contact Mr. Sellers at other times. According to defendant, Mr. Sellers said he would transfer defendant's file to the appropriate probation office in Nags Head, but he never did. Consequently, defendant returned to Bertie County at some point in 2011 to find out what was happening with his probation.

When defendant returned to Bertie County, he lived with his mother at an address that defendant never provided to the probation office. Defendant claimed that he went to the Bertie County probation office to find Mr. Sellers, but Mr. Sellers was never in the office.

Defendant further testified that he most recently tried to report to a probation officer in November 2012. Defendant admitted he was arrested on 24 November 2012 at a traffic checkpoint in Plymouth for absconding from probation. Defendant had been in jail since his arrest.

At the conclusion of the hearing, the trial court ordered defendant's probation revoked "for absconding." The same day, 10 December 2012, the trial court entered a judgment revoking defendant's probation and activating defendant's sentence, with credit for the active imprisonment defendant already served under the prior split sentence. In its judgment, using the form AOC-CR-607, Rev. 12/12, entitled "JUDGMENT AND COMMITMENT UPON REVOCATION OF PROBATION -- FELONY (STRUCTURED SENTENCING) (For Revocation Hearings On Or After Dec. 1, 2011)," the court found that defendant violated his probation based on all four violations alleged in the probation violation report. We have granted defendant's petition for writ of certiorari seeking review of the trial court's judgment revoking defendant's probation.

I

Defendant first contends that the trial court erred in revoking his probation for "absconding" because the absconding condition of probation only came into existence with the

enactment of the JRA, and the JRA is inapplicable to defendant's probation. Defendant further claims he was not given notice that the new absconding provision applied to his probation.

This Court has previously recognized that

> for probation violations occurring on or after 1 December 2011, the JRA limited trial courts' authority to revoke probation to those circumstances in which the probationer: (1) commits a new crime in violation of N.C. Gen. Stat. § 15A-1343(b)(1) [(2011)]; (2) absconds supervision in violation of N.C. Gen. Stat. § 15A-1343(b)(3a); or (3) violates any condition of probation after serving two prior periods of [confinement in response to violations ("CRV")] under N.C. Gen. Stat. § 15A-1344(d2) [(2011)]. *See* N.C. Gen. Stat. § 15A-1344(a). For all other probation violations, the JRA authorizes courts to alter the terms of probation pursuant to N.C. Gen. Stat. § 15A-1344(a) or impose a CRV in accordance with N.C. Gen. Stat. § 15A-1344(d2), but not to revoke probation. *Id.*

*State v. Nolen*, ___ N.C. App. ___, ___, 743 S.E.2d 729, 730 (2013).

Further, "the JRA made the following a regular condition of probation: 'Not to abscond, by willfully avoiding supervision or by willfully making the defendant's whereabouts unknown to the supervising probation officer.'" *State v. Hunnicutt*, ___ N.C. App. ___, ___, 740 S.E.2d 906, 910 (2013) (quoting N.C. Gen. Stat. § 15A-1343(b)(3a)). Following amendments to the JRA, "the new absconding condition [is] applicable only to *offenses*

committed on or after 1 December 2011, while the limited revoking authority [is] effective for probation violations occurring on or after 1 December 2011." *Id.* at ___, 740 S.E.2d at 911.

Defendant correctly asserts that the new absconding condition provided for in the JRA does not apply to his probation, since his probation was based upon an offense committed on 28 September 2010. We, however, disagree with defendant's contention that since he was not subject to the new absconding condition, the trial court's revocation of his probation "for absconding" was necessarily invalid.

In *Hunnicutt*, as here, the defendant argued that the trial court erred in activating his sentence on the grounds that he "'absconded by willfully avoiding supervision'" since "no such condition was ever imposed upon him, . . . he had no notice of such a condition, and . . . the trial court had no authority to impose any condition prohibiting 'absconding by willfully avoiding supervision.'" *Id.* at ___, 740 S.E.2d at 910. The violation report at issue in *Hunnicutt* alleged:

> "Of the conditions of probation imposed in [the] judgment, the defendant has willfully violated:
>
> 1. Condition of Probation 'Report as directed by the Court or the probation officer to the officer at reasonable times and places . . .' in that THE DEFENDANT

> FAILED TO REPORT TO HIS SUPERVISING OFFICER AS DIRECTED ON 11/10/2011 AND 11/21/2011.
>
> 2. Condition of Probation 'Remain within the jurisdiction of the Court unless granted written permission to leave by the Court or the probation officer' in that DESPITE NUMEROUS ATTEMPTS BY THE SUPERVISING OFFICER, THE DEFENDANT REFUSES TO REPORT AS DIRECTED AND DOES NOT RESPOND TO CONTACT NOTICES LEFT BY THE SUPERVISING OFFICER. THE DEFENDANT HAS RENDERED HIMSELF UNAVAILABLE FOR SUPERVISION."

*Id.* at ___, 740 S.E.2d at 911.

At the conclusion of the revocation hearing, the trial court in *Hunnicutt* found that the defendant's probation officer called the defendant on a certain date, and the defendant hung up on her; that on a different date, the defendant reported to the probation office on a day he was supposed to report, but at an improper time; and that on the latter day, the defendant left the office on his own despite being told to wait by the probation officer until the officer finished a meeting. *Id.* at ___, 740 S.E.2d at 912.

On appeal, this Court held that neither the JRA's limited revoking authority nor the new absconding condition applied to the defendant because "both the offenses and the probation violations at issue occurred prior to 1 December 2011." *Id.* at ___, 740 S.E.2d at 911. The Court then turned to the defendant's contention that the trial court necessarily relied

upon the new absconding condition in revoking his probation given the trial court's statements at the hearing that the defendant "'did abscond'" and that "'[i]t's not that he made his whereabouts unknown, it's that he absconded by willfully avoiding supervision.'" *Id.* at ___, 740 S.E.2d at 911. The defendant further noted that the trial court checked the box on the Administrative Office of the Courts form judgment that stated the defendant had "'abscond[ed] from supervision' pursuant to 'G. S. 15A-1343(b)(3a).'" *Id.* at ___, 740 S.E.2d at 911.

This Court rejected the argument that the trial court's references to absconding and the AOC form showed the trial court improperly relied upon the new, inapplicable absconding condition of the JRA when revoking the defendant's probation, explaining:

> Although N.C. Gen. Stat. § 15A-1343(b)(3a) introduced the term "abscond" into our probation statutes for the first time, the term "abscond" has frequently been used when referring to violations of the longstanding statutory probation conditions to "remain within the jurisdiction of the court" or to "report as directed to the officer." *See, e.g.*, *State v. Brown*, ___ N.C. App. ___, 731 S.E.2d 530 (2012); *State v. High*, 183 N.C. App. 443, 645 S.E.2d 394 (2007); *State v. Coffey*, 74 N.C. App. 137, 327 S.E.2d 606 (1985). Both are regular conditions of probation under N.C. Gen. Stat. § 15A-1343 and, therefore, "are in every circumstance valid conditions of

probation." N.C. Gen. Stat. § 15A-1342(g) (2011).

*Id.* at ___, 740 S.E.2d at 911. The Court observed that the defendant "had notice of his obligation to 'remain within the jurisdiction of the court' and to 'report as directed to the [probation] officer'" based on the language providing for those conditions in the defendant's original judgment suspending sentence. *Id.* at ___, 740 S.E.2d at 911.

This Court in *Hunnicutt* then held that "[d]espite its colloquial and perhaps imprecise usage of the term 'abscond,' it is clear from the record that the trial court activated Defendant's sentence on the basis of [the probation officer's] testimony explaining the circumstances surrounding the violations listed in the reports." *Id.* at ___, 740 S.E.2d at 912. Accordingly, the Court rejected the defendant's argument "that the trial court retroactively engrafted the condition created by the JRA onto his existing probation conditions." *Id.* at ___, 740 S.E.2d at 912.

Here, the third alleged violation in the report was that defendant failed to "'obtain prior approval from the officer for, and notify the officer of, any change in address'" when he left his residence of record on 15 November 2011 and failed to make his whereabouts known to his probation officer after that date. Since the alleged violation occurred prior to 1 December

2011, the JRA's limited revoking authority did not apply to that violation.

Defendant does not dispute that his original judgment suspending sentence provided as a condition of probation that he "obtain prior approval from the officer for, and notify the officer of, any change in address." We believe that the reasoning of *Hunnicutt* applies to this violation, and that the trial court's statement that defendant's probation was revoked for "absconding" was a reference to the third alleged violation in the report. *See High*, 183 N.C. App. at 445, 645 S.E.2d at 395 (referring to probation violation report allegation that "'[o]n or about 6-13-03 the defendant left his residence . . . in Knightdale and has failed to make himself available for supervision or notify his probation officer of his whereabouts'" as allegation that defendant "violated his probation by absconding").

Turning to the fourth alleged violation, the 7 March 2012 report alleged that defendant failed to "'[r]emain within the jurisdiction of the Court unless granted written permission to leave by the Court or the probation officer'" since defendant "ABSCONDED" supervision and had failed to give his probation officer a valid address "SINCE 11/15/12." In other words, the report, which was filed in March 2012, alleged that defendant

had violated his probation eight months in the future in November 2012. Although defendant argues that the report should be read as referring to a 2012 violation, obviously, the reference to 2012 is a typographical error. Comparing the allegations in the third alleged violation and in the fourth violation, it appears that the probation officer intended the fourth violation to have the same date as the third violation, 15 November *2011*.

Indeed, defendant himself testified that he failed to contact any probation officer after April 2011 and moved back to Bertie County, to an address not known to his probation officer, at some point in 2011. Defendant's testimony thus also indicates that the trial court and the parties all understood the fourth alleged violation to refer to a violation in November 2011 and not November 2012. Under these circumstances, we conclude that the fourth alleged violation, actually referring to a violation on 15 November 2011, was also not subject to the JRA's limited revoking authority.

Defendant nonetheless cites *State v. Jarman*, 140 N.C. App. 198, 535 S.E.2d 875 (2000), in support of his argument that we should interpret the probation violation report, and the proceedings based upon it, as providing for an alleged violation in November 2012 that was subject to the court's limited

revoking authority. In *Jarman*, this Court explained that "[w]here there has been uncertainty in whether an error was 'clerical,' the appellate courts have opted to 'err on the side of caution and resolve [the discrepancy] in the defendant's favor.'" *Id.* at 203, 535 S.E.2d at 879 (first alteration added) (quoting *State v. Morston*, 336 N.C. 381, 410, 445 S.E.2d 1, 17 (1994)).

*Jarman*, however, provides no authority for defendant's argument that this court is bound to interpret the alleged fourth violation of the report, as incorporated by reference into the trial court's judgment revoking probation, without taking into account the date listed for the factually similar third alleged violation, the filing date of the report, and defendant's own testimony at trial. We do not believe, given the entire record, that there is any uncertainty regarding whether there was a typographical error as to the date of the fourth violation alleged in the report.

Given the fourth violation occurred in November 2011, under *Hunnicutt*, we believe the trial court's reference in the hearing to "absconding" expressed the court's intent to revoke based on the fourth, as well as the third, violation. As with the third violation, defendant does not dispute that his original judgment suspending sentence required defendant to "[r]emain within the

jurisdiction of the Court unless granted written permission to leave by the Court or the probation officer."

In sum, we hold that the trial court's reference to "absconding" does not show that the court improperly revoked defendant's probation based on the JRA's new absconding provision. Further, defendant had notice of the conditions for which his probation was revoked.

However, the court's judgment revoking probation incorporates the four paragraphs of the violation report by reference, including the error regarding the date of the fourth violation. Accordingly, we must remand the judgment to the trial court to correct the clerical error in the date of the violation, found by the court, based upon the fourth paragraph in the report. *See State v. Smith*, 188 N.C. App. 842, 845, 656 S.E.2d 695, 696 (2008) ("When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court for correction because of the importance that the record 'speak the truth.'" (quoting *State v. Linemann*, 135 N.C. App. 734, 738, 522 S.E.2d 781, 784 (1999))).

## II

Defendant next contends that the trial court abused its discretion in revoking his probation. When the trial court's

findings that a defendant violated his probation are supported by competent evidence, we review the court's decision to revoke the defendant's probation for an abuse of discretion. *State v. Young*, 190 N.C. App. 458, 459, 660 S.E.2d 574, 576 (2008).

The verified violation report in this case provided competent evidence from which the trial court could find that defendant left his residence of record on 15 November 2011 and subsequently failed to make his whereabouts known to his probation officer. *See State v. Gamble*, 50 N.C. App. 658, 661, 274 S.E.2d 874, 876 (1981) ("Defendant's allegation that the State presented no evidence is erroneous, because introduction of the sworn probation violation report constituted competent evidence sufficient to support the order revoking his probation.").

In addition, defendant testified that he last successfully contacted Mr. Sellers in April 2011 and that he moved from Nags Head to Bertie County later that year. Defendant admitted that he never provided his new Bertie County address to his probation officer. Thus, the report and defendant's testimony constituted competent evidence that defendant violated his probation by moving from Nags Head to Bertie County without prior approval and failing to keep his probation officer aware of his whereabouts.

Moreover, with respect to the court's decision to revoke defendant's probation, defendant admitted to violating his probation by being in arrears with respect to court indebtedness in the amount of $400.00 and by failing to attend the Day Reporting Center as directed since October 2011. Following the presentation of evidence, the trial court further questioned defendant about why he left Nags Head and returned to Bertie County in 2011, and the court indicated that it did not believe defendant's story that defendant returned in order to check on his probation and, yet, never turned himself in for absconding. Indeed, as the trial court noted, defendant admitted that he never actually made contact with his probation officer after April 2011, and defendant was out of touch with the probation office until he was arrested for absconding from probation in November 2012 at a traffic checkpoint in Plymouth.

Defendant nonetheless cites *State v. Boone*, ___ N.C. App. ___, 741 S.E.2d 371 (2013), in support of his argument that the court abused its discretion in revoking his probation. There, the defendant's probation officer "filed a violation report alleging that defendant had willfully violated his probation by failing to complete any of his community service, being $700 in arrears of his original balance, and being $150 in arrears of his supervision fee." *Id.* at ___, 741 S.E.2d at 371-72. On

appeal, the defendant argued "there was no evidence presented that he violated the terms of his probation because the State failed to present evidence of a payment plan and schedule for community service . . . ." *Id.* at ___, 741 S.E.2d at 372.

This Court agreed and reversed the judgment revoking the defendant's probation since the judgment suspending sentence left the schedule for payment of fees and community service to be set by the probation officer, the officer never testified to any schedule for the fees or community service, and, at the time of the violation report, six months remained on the defendant's probation. *Id.* at ___, 741 S.E.2d at 372.

Defendant argues here, similarly, that "the State never established a schedule for reporting or any evidence that he failed to report to his probation officer" and "never cited a single instance that [defendant] was asked to report or was asked to provide a valid address to his probation officer." However, in this case, defendant's original judgment suspending sentence required defendant to "obtain prior approval" for any change in address and "[r]emain within the jurisdiction of the Court unless granted written permission to leave." Thus, unlike the original judgment in *Boone*, the judgment here specifically provides that defendant must obtain *prior* approval when changing

his address or leaving the jurisdiction; no further "schedule" was necessary.

Defendant also argues that because of the clerical error in the fourth alleged violation in the report, the verified report could not constitute competent evidence supporting the court's revocation of his probation and must be treated as an unverified report. However, defendant does not cite any authority, and we have found none, supporting defendant's contention.

Although defendant further challenges the testimony of Ms. Outlaw as based upon hearsay and as insufficient to support the court's findings, his hearsay argument was not made below and is therefore not preserved for appeal. *See* N.C.R. App. P. 10(a)(1). In any event, the other competent evidence -- the verified report and defendant's own testimony -- supported the court's findings and judgment. The trial court did not, therefore, abuse its discretion in revoking defendant's probation.

Affirmed in part; remanded in part.

Chief Judge MARTIN and Judge STROUD concur.

Report per Rule 30(e).