STATE OF NORTH CAROLINA v. DALE VERNON COMPTON

No. 8728SC975

(Filed 3 May 1988)

**False Pretense § 3— personal property in exchange for real property—real property not conveyed—insufficiency of evidence of intent to defraud**

Evidence was insufficient to support defendant's conviction of obtaining property by false pretenses where it tended to show that defendant promised to convey five acres of property to a third person in exchange for money and various items of personal property; defendant took the personal property to his home in New York but never conveyed the five acres, though the buyer was ready, willing, and able to close; defendant gave his correct phone number and address to the purchaser before he returned to New York, as well as the name, address, and phone number of a local attorney who defendant testified he had hired to represent him and whose name appeared as trustee on the deed of trust securing the tract; although defendant did not return to the area until several months after he entered into the contract, defendant called the purchaser several times and obtained his help in selling additional lots within the tract; the purchaser himself testified that defendant did nothing which caused him to believe the closing would not occur; defendant, before indictment, returned what he had remaining in his possession of the purchaser's personal property; and this evidence was insufficient to allow an inference that defendant's promise was made without the present intention to comply with it.

Judge PHILLIPS dissenting.

APPEAL by defendant from *Burroughs, Judge.* Judgment entered 16 June 1987 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 28 March 1988.

Defendant was indicted on one count of obtaining property by false pretenses. The evidence at trial showed that in 1983 defendant and his wife purchased approximately 500 acres of land in Buncombe County. Although the property was subject to a deed of trust, certain property within the tract could be released upon payment to the seller of $1,000 per acre. On 11 April 1984, defendant and his wife agreed to sell 5 acres of the tract to Mr. Raymond Wheeler for $30,000. The contract provided that Mr.

Wheeler would pay $300 in earnest money and $4,700 on the date of closing, which was to be "approx[imately] May 15." The remaining $25,000 was "to be paid in trade" out of Mr. Wheeler's collection of guns, knives, coins, rings, and various items made of ivory. The parties also orally agreed that, before closing, defendant would repair the road leading to the property and supply Mr. Wheeler with a list of the restrictive covenants applicable to the property.

On the same day the contract was signed, defendant and his wife went to Mr. Wheeler's home and picked out the items they wanted to take in trade. Mr. Wheeler wrote up receipts, listing each item separately and the value they had agreed to place on each one. The following day, defendant and his wife took most of the items to their residence in New York. On 14 May 1984, Mr. Wheeler obtained a cashier's check made out to defendant and his wife in the amount of $4,700. Shortly thereafter, he notified defendant that he had the money and was ready to close. Defendant responded that he would be in North Carolina soon and they could close then.

Although he spoke with Mr. Wheeler several times by telephone in the ensuing months, defendant did not return to the area until October. When he did return, defendant directed his efforts at selling more lots in the tract and, in fact, entered into several other contracts, including another one with Mr. Wheeler for the sale of two additional lots. In attempting to sell other lots, defendant enlisted the help of Mr. Wheeler, who showed the property to prospective buyers on five separate occasions during October and November.

Defendant failed to make timely payments on his promissory note and on 7 May 1985 foreclosure proceedings were instituted. When Mr. Wheeler found out about the proceedings, he contacted defendant, who told him that he believed he could make the payments and that the foreclosure would not occur. Defendant did not make the payment and the entire tract was foreclosed on without defendant having conveyed the 5 acres to Mr. Wheeler. Prior to his indictment, defendant returned about $3,000 worth of the property he had taken from Mr. Wheeler in the trade. The remainder of it had apparently been distributed to other individuals through defendant's involvement with a national barter organization.

At the close of the State's evidence, and again at the close of all the evidence, defendant moved to dismiss the charge. The trial court denied the motions and the jury returned a verdict finding defendant guilty. Defendant appeals.

*Attorney General Thornburg, by Assistant Attorney General K. D. Sturgis, for the State.*

*Herbert L. Hyde for the defendant-appellant.*

EAGLES, Judge.

Defendant assigns as error the trial court's failure to grant his motion to dismiss at the close of all the evidence, arguing that the evidence is insufficient to support the conviction.

Obtaining property by false pretenses is defined as (1) a false representation of a past or subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which the defendant obtains or attempts to obtain anything of value from another person. *State v. Cronin,* 299 N.C. 229, 242, 262 S.E. 2d 277, 286 (1980); G.S. 14-100(a). A key element of the offense is that the representation be intentionally false and deceptive. *State v. Kelly,* 75 N.C. App. 461, 331 S.E. 2d 227, *disc. rev. denied,* 315 N.C. 187, 339 S.E. 2d 409 (1985). Prior to the 1975 amendment to G.S. 14-100(a), criminal liability could not be imposed on someone for misrepresenting their intention to do something in the future since their "state of mind" was not considered a subsisting fact. *See State v. Hargett,* 259 N.C. 496, 130 S.E. 2d 865 (1963). *Cf., United States v. O'Boyle,* 680 F. 2d 34 (6th Cir. 1982); *People v. Ashley,* 42 Cal. 2d 246, 267 P. 2d 271, *cert. denied,* 348 U.S. 900, 99 L.Ed. 707, 75 S.Ct. 222 (1954). The statute's amendment, however, broadened the scope of proscribed activity, *State v. Cronin, supra,* to include, within the definition of "false pretense," cases where someone misrepresents his present intention to perform a promise.

Defendant argues that the evidence is insufficient to enable the jury to find that he did not intend to comply with the contract and convey the property to Mr. Wheeler. In reviewing whether the evidence is sufficient to go to the jury, the trial court must view the evidence in the light most favorable to the State, giving it the benefit of all reasonable inferences which can be drawn

therefrom. *State v. Agnew*, 294 N.C. 382, 241 S.E. 2d 684, *cert. denied*, 439 U.S. 830, 58 L.Ed. 2d 124, 99 S.Ct. 107 (1978). At this point defendant's evidence may be considered only to the extent that it clarifies, explains, or is not inconsistent with the State's evidence. *State v. Bennett*, 84 N.C. App. 689, 353 S.E. 2d 690 (1987). If the record reveals substantial evidence of the essential elements of offense, the defendant's motion to dismiss should be denied. *State v. Bates*, 313 N.C. 580, 330 S.E. 2d 200 (1985).

Applying those principles here, we find the evidence is insufficient to enable a reasonable mind to infer that defendant falsely represented his intention to convey the property to Mr. Wheeler. A person's intent is seldom provable by direct evidence, and must usually be shown through circumstantial evidence. *State v. Bennett, supra*. The State argues that the evidence shows that defendant's failure to convey the property was inexcusable, and that it, together with evidence of defendant's failure, after several requests, to repair the road or supply Mr. Wheeler with a list of the restrictive covenants, is sufficient circumstantial evidence to show that defendant's promise was false.

We agree that the record does not articulate a good reason for defendant's failure to set a closing date and convey the 5 acres to Mr. Wheeler. G.S. 14-100(b), however, recognizes the danger that juries may improperly infer criminal intent merely from a defendant's failure to carry out his promise, and provides that evidence of the nonfulfillment of a contractual obligation, standing alone, is not sufficient to show an intent to defraud. G.S. 14-100(b). *Cf.* MODEL PENAL CODE, section 223.3(1) (American Law Institute 1962) (failure to meet contractual obligation does not, by itself, support an inference that the promise was false). Evidence of conduct which shows merely that the defendant was inept or that he failed to diligently pursue the accomplishment of his promise, is insufficient to allow an inference that the promise was made without the present intention to comply with it.

Here, the record discloses no other incriminating evidence. The evidence showed that defendant gave his correct telephone number and address to Mr. Wheeler before he returned to New York, as well as the name, address, and telephone number of a local attorney who defendant testified he had hired to represent him and whose name appears as trustee on the deed of trust se-

curing the tract. Although defendant did not return to the area until several months after he entered into the contract, defendant called Mr. Wheeler several times and obtained his help in selling additional lots within the tract. Significantly, Mr. Wheeler himself testified that defendant did nothing which caused him to believe the closing would not occur. In addition, evidence that defendant, before indictment, returned what he had remaining in his possession of Mr. Wheeler's personal property is some evidence that he did not intend to defraud Mr. Wheeler. *See State v. Johnson*, 195 N.C. 506, 142 S.E. 775 (1928) (evidence that defendant confessed and satisfied judgment in favor of prosecuting witness before criminal proceedings were instituted is relevant to show absence of intent to defraud).

The evidence here is insufficient to allow a reasonable mind to conclude that defendant made a false representation with intent to defraud. Consequently, the trial court erred in denying defendant's motion to dismiss.

Reversed.

Chief Judge HEDRICK concurs.

Judge PHILLIPS dissents.

Judge PHILLIPS dissenting.

In my opinion the evidence supports defendant's conviction.