ARROWOOD, Judge.
Jeffrey Philip Maier ("defendant")[1] appeals from judgments entered upon his convictions for obtaining property by false pretense and failing to work after being paid. For the following reasons, we find no error.
I. Background
A Guilford County Grand Jury indicted defendant on two counts of obtaining property by false pretense on 20 January 2015 in file numbers 14 CRS 90531 and 90532, and on one count of failing to work after being paid on 26 September 2016 in file number 14 CRS 91658. Defendant was also charged by information in file number 14 CRS 92810 for an additional count of obtaining property by false pretense.
The case was tried in Guilford County Superior Court before the Honorable Paul L. Jones beginning on 6 December 2017. When the matter began, the State moved to join the indicted offenses for trial. Defendant joined the State's motion and additionally requested that the count of obtaining property by false pretense charged by information be joined. Upon defendant's waiver of a formal presentment to the Grand Jury, the trial court joined all four offenses for trial.[2]
The evidence shows that defendant, through the roofing repair company that he owned and operated, Hail Strike Restoration, accepted insurance money from homeowners who believed Hail Strike would repair storm damage to their roofs. Specifically, defendant used telemarketers to acquire business leads in areas affected by storms. Defendant then hired sales representatives as independent contractors to follow the leads. The sales representative would meet with homeowners and pitch Hail Strike's services using information packets provided by defendant. If the homeowners were interested, the sales representative would assess the damage and help the homeowner file an insurance claim. At that time, the sales representative would have the homeowner sign a contingency agreement. After an insurance adjustor assessed the damage and approved repairs, the sales representative would return to have the homeowner sign a contract and collect the initial check from the insurance company. That check was then forwarded to defendant.
Pete Trudniak, a sales representative for Hail Strike who was hired by defendant after responding to an advertisement on Craigslist, went through this process with the owners of four properties in Guilford County. Those homeowners, Mr. and Mrs. Roberts, Ms. Briggs, and Ms. Allen, signed contracts and turned-over insurance checks to have storm damage repaired. Those repairs, however, were either never begun or were not completed.
On 8 December 2017, the jury returned verdicts finding defendant guilty on all counts. The trial court entered judgments thereon. Specifically, the trial court consolidated the failing to work after being paid conviction with one of the obtaining property by false pretense convictions and entered three separate judgments for the obtaining property by false pretense convictions sentencing defendant to consecutive terms of 8 to 19 months imprisonment. Defendant filed notice of appeal on 19 December 2017.
II. Discussion
Defendant raises two issues on appeal: whether the trial court (1) lacked jurisdiction to enter the judgments due to insufficient indictments; and (2) erred in denying his motions to dismiss.
1. Indictments
Defendant first contends the trial court lacked jurisdiction to enter judgments on the obtaining property by false pretense convictions because the indictments and the information fail to sufficiently allege obtaining property by false pretense.
Defendant did not challenge the sufficiency of the indictments or information below. Nevertheless,
[a]lthough defendant did not object at trial to the facial inadequacy of the ... indictment, "[a] challenge to the facial validity of an indictment may be brought at any time, and need not be raised at trial for preservation on appeal." State v. LePage , 204 N.C. App. 37, 49, 693 S.E.2d 157, 165 (2010). "[W]e review the sufficiency of an indictment de novo ." State v. McKoy , 196 N.C. App. 650, 652, 675 S.E.2d 406, 409 (2009).
State v. Oxendine , 246 N.C. App. 502, 504, 783 S.E.2d 286, 289, disc. review denied , 368 N.C. 921, 787 S.E.2d 24 (2016). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." State v. Biber , 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) (quotation marks and citations omitted).
Our courts have long recognized that "[i]t is elementary that a valid bill of indictment is essential to the jurisdiction of the trial court to try an accused for a felony." State v. Sturdivant , 304 N.C. 293, 308, 283 S.E.2d 719, 729 (1981). "The purpose of the indictment is to give a defendant reasonable notice of the charge against him so that he may prepare for trial." State v. Campbell , 368 N.C. 83, 86, 772 S.E.2d 440, 443 (2015). Therefore, " '[a]n [information or] indictment must allege lucidly and accurately all the essential elements of the offense endeavored to be charged.' " State v. Ellis , 368 N.C. 342, 344, 776 S.E.2d 675, 677 (2015) (quoting State v. Hunt , 357 N.C. 257, 267, 582 S.E.2d 593, 600 (2003) ); see also N.C. Gen. Stat. § 15A-924(a)(5) (2017). "A criminal pleading ... is fatally defective if it 'fails to state some essential and necessary element of the offense of which the defendant is found guilty.' " Id . (quoting State v. Gregory , 223 N.C. 415, 418, 27 S.E.2d 140, 142 (1943) ).
However, " '[o]ur courts have recognized that[,] while an indictment should give a defendant sufficient notice of the charges against him, it should not be subjected to hyper technical scrutiny with respect to form.' " State v. Harris , 219 N.C. App. 590, 592, 724 S.E.2d 633, 636 (2012) (quoting In re S.R.S. , 180 N.C. App. 151, 153, 636 S.E.2d 277, 280 (2006) ). " 'The general rule in this State and elsewhere is that an indictment for a statutory offense is sufficient, if the offense is charged in the words of the statute, either literally or substantially, or in equivalent words.' " State v. Simpson , 235 N.C. App. 398, 400-01, 763 S.E.2d 1, 3 (2014) (quoting State v. Greer , 238 N.C. 325, 328, 77 S.E.2d 917, 920 (1953) ).
Oxendine , 246 N.C. App. at 504-505, 783 S.E.2d at 289. "[A] conviction based on an invalid indictment must be vacated." Campbell , 368 N.C. at 86, 772 S.E.2d at 443.
The felony of obtaining property by false pretenses is set forth in N.C. Gen. Stat. § 14-100.
Obtaining property by false pretenses consists of four elements: "(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another."
State v. Seelig , 226 N.C. App. 147, 152, 738 S.E.2d 427, 431 (quoting State v. Cronin , 299 N.C. 229, 242, 262 S.E.2d 277, 286 (1980) ), disc. review denied , 366 N.C. 598, 743 S.E.2d 182 (2013). "[T]o sustain a charge of obtaining property by false pretenses, the indictment must state the alleged false representation." State v. Braswell , 225 N.C. App. 734, 740, 738 S.E.2d 229, 233 (2013).
The indictments and the information purporting to charge obtaining property by false pretense in this case are similar in that each alleges that defendant "unlawfully, willfully and feloniously did knowingly and designedly with the intent to cheat and defraud, obtain [a specified amount of money] from [the specified victim] by means of a false pretense which was calculated to deceive and did deceive." The indictments and the information further allege that "[t]he false pretense consisted of the following: collecting money to conduct home repairs at [the specified address] and then failing to initiate said repairs." Each charging document fills in a specific amount of money from a specific victim for repairs to a specific address.
In his argument that the indictments and the information were deficient, defendant identifies only the descriptions of the false pretenses and contends "[t]hese descriptions do not plainly and concisely assert the facts of the alleged offense with sufficient precision to clearly apprise [him] of the conduct which is the subject of the accusation." (Internal quotation marks and ellipses omitted). Defendant asserts that the descriptions "allege only that [he] failed to fulfill a contractual obligation," which, by the terms of N.C. Gen. Stat. § 14-100(b), is defined not to be obtaining property by false pretense. See N.C. Gen. Stat. § 14-100(b) (2017) ("Evidence of nonfulfillment of a contract obligation standing alone shall not establish the essential element of intent to defraud."). Defendant relies on State v. Compton , 90 N.C. App. 101, 367 S.E.2d 353 (1988), to point out that N.C. Gen. Stat. § 14-100(b)"recognizes the danger that juries may improperly infer criminal intent merely from a defendant's failure to carry out his promise[.]" 90 N.C. App. at 104, 367 S.E.2d at 355. However, other than emphasizing what N.C. Gen. Stat. § 14-100(b) clearly states, Compton is not pertinent to determining the sufficiency of an indictment. In Compton , the only argument before this Court was that the trial court erred in denying the defendant's motion to dismiss because "the evidence [was] insufficient to enable the jury to find that he did not intend to comply with [a] contract and convey the property ...." Id. at 103, 367 S.E.2d at 355.
Defendant also points to evidence introduced at trial and argues that because the evidence was that defendant never directly communicated with the victims, the indictments needed to be more specific in the theories alleged. Defendant then asserts that "[f]or the pleadings at issue here to allege obtaining property by false pretense, it would be necessary for them to allege plainly and concisely that, at the time [Hail Strike] contracted with the [homeowners], [defendant] knowingly did not intend for their homes to be repaired."
Upon consideration of defendant's arguments, we are not convinced the indictments and information for obtaining property by false pretense are insufficient in this case. Defendant's argument that the indictments must be more specific in the theories alleged would subject the indictments to hyper-technical scrutiny.
As stated above, a facial challenge to an indictment challenges the sufficiency of an indictment to charge a felony by alleging the essential elements of the offense. Thus, it is not necessary for this Court to consider the evidence at trial when reviewing the facial validity of an indictment. When considered in their entirety, the indictments and information in this case sufficiently allege each element of obtaining property by false pretense to put defendant on notice of the charge, thereby enabling him to prepare for trial, and to avoid any risk of double jeopardy.
Our Courts have pointed out that "the false pretense need not come through spoken words, but instead may be by act or conduct." State v. Parker , 354 N.C. 268, 284, 553 S.E.2d 885, 897 (2001), cert. denied , 535 U.S. 1114, 153 L.Ed. 2d 162 (2002). It is evident from the indictments and information that the false pretense in this case was a false representation of a future fulfillment or event-the collection of money to complete home repairs that were never completed. See Seelig , 226 N.C. App. at 152, 738 S.E.2d at 431. What defendant misses by identifying only the description of the false pretense, is that the indictments and information allege that the money received by defendant for the home repairs was obtained with the intent to cheat and defraud the victims and the false representation was calculated to deceive and did deceive.
We hold that the indictments and the information, which are couched in the language of N.C. Gen. Stat. § 14-100, sufficiently allege the essential elements of obtaining property by false pretense. Therefore, the trial court had jurisdiction over the charges and did not err in entering judgments on the jury verdicts.
2. Motion to Dismiss
Defendant also contends the trial court erred in denying his motions to dismiss the charges, both the obtaining property by false pretense charges and the failing to work after being paid charge, for insufficient evidence. Defendant moved to dismiss at the close of the State's evidence and at the close of all the evidence.
"This Court reviews the trial court's denial of a motion to dismiss de novo ." State v. Smith , 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). " 'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' " State v. Fritsch , 351 N.C. 373, 378, 526 S.E.2d 451, 455 (quoting State v. Barnes , 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993) ), cert. denied , 531 U.S. 890, 148 L.Ed. 2d 150 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith , 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." State v. Rose , 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), cert. denied , 515 U.S. 1135, 132 L.Ed. 2d 818 (1995). "The trial court is not required to determine that the evidence excludes every reasonable hypothesis of innocence before denying a defendant's motion to dismiss." State v. Barfield , 127 N.C. App. 399, 401, 489 S.E.2d 905, 907 (1997).
" 'An essential element of the crime [obtaining property by false pretense] is that the act be done "knowingly and designedly ... with intent to cheat or defraud." ' " Braswell , 225 N.C. App. at 740, 738 S.E.2d at 233 (quoting State v. Bennett , 84 N.C. App. 689, 691, 353 S.E.2d 690, 691-92 (1987) (quoting State v. Hines , 54 N.C. App. 529, 532-33, 284 S.E.2d 164, 167 (1981) ) ). The misdemeanor offense failing to work after being paid similarly requires that the offender act "with intent to cheat or defraud[.]" See N.C. Gen. Stat. § 14-104 (2017) ("If any person, with intent to cheat or defraud another, shall obtain any advances in money ... from any other person ... upon and by color of any promise or agreement that the person making the same will begin any work or labor of any description for such person ... from whom the advances are obtained, and the person making the promise or agreement shall willfully fail, without a lawful excuse, to commence or complete such work according to contract, he shall be guilty of a Class 2 misdemeanor.").
Defendant contends that even if the indictments and the information charging obtaining property by false pretense are not fatally defective, the State failed to present sufficient evidence that he acted with criminal intent to cheat or defraud to support any of the charges. In so arguing, defendant acknowledges that,
[i]ntent is seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred. In determining the absence or presence of intent, the jury may consider the acts and conduct of the defendant and the general circumstances existing at the time of the alleged commission of the offense charged.
Braswell , 225 N.C. App. at 740, 738 S.E.2d at 233 (quotation marks omitted).
Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, taken singly or in combination , satisfy [it] beyond a reasonable doubt that the defendant is actually guilty.
Fritsch , 351 N.C. at 379, 526 S.E.2d at 455 (citation and quotation marks omitted).
Defendant contends no evidence was presented, either direct or circumstantial, showing criminal intent to cheat or defraud, or of an intentionally deceptive representation. Defendant asserts that the State's evidence showed only that the victim's signed over insurance checks to a man whom defendant hired, that the victim's homes were never repaired, and that it was not the job of the employees defendant hired to find subcontractors. Defendant also points to evidence of bank account records showing that he transferred funds into a Hail Strike account and signed checks to construction subcontractors. Defendant asserts these actions reveal his intention to invest in Hail Strike and continue its operations. Defendant argues any evidence that he was a bad business owner is irrelevant because, as recognized above, "[e]vidence of nonfulfillment of a contract obligation standing alone shall not establish the essential element of intent to defraud." N.C. Gen. Stat. § 14-100(b).
Defendant also argues the charges should have been dismissed because there was a fatal variance between the evidence and the allegations in the indictments and the information. Defendant, however, points to the same evidence that he moved money into a company account and signed checks to construction subcontractors.
While we acknowledge the evidence that defendant claims shows his intent for Hail Strike to continue its operations, it is not this Court's job to reweigh the evidence. See State v. Chekanow , 370 N.C. 488, 499, 809 S.E.2d 546, 554 (2018) ("evidence is for the jury to weigh, not the trial court, and it is certainly not for the appellate courts to reweigh."). As explained above, this Court's review of the trial court's denial of defendant's motion to dismiss is limited to determining whether the evidence is sufficient, when viewed in the light most favorable to the State and when reasonable inferences are drawn in the State's favor, to allow the jury to decide the issue. See Rose , 339 N.C. at 192, 451 S.E.2d at 223 ; see also Chekanow , 370 N.C. at 499, 809 S.E.2d at 554 ("When a trial court rules on a motion to dismiss, the court gives considerable deference to the State's evidence.").
Although N.C. Gen. Stat. § 14-100(b) provides "evidence of nonfulfillment of a contract obligation standing alone shall not establish the essential element of intent to defraud[,]" the statute does not prohibit the consideration of the nonfulfillment of a contract obligation along with other evidence. Here, the State contends the evidence is not just that defendant did not fulfill the contract, but that defendant, on various occasions, collected homeowners' insurance checks and then took no steps to initiate repairs. We agree with the State that there was sufficient evidence of intent to cheat and defraud to allow the case to be decided by the jury.
Viewing the evidence in the light most favorable to the State, the evidence shows that defendant had complete control over Hail Strike. Tanya Sinklear, who was hired by defendant as an independent contractor to perform administrative duties for Hail Strike after responding to an advertisement on Craigslist, testified that defendant had control over the funds received by homeowners and operated the accounts containing those funds, both his personal account and Hail Strike's account. Trudniak testified that when an insurance check was collected from a homeowner, the check was forwarded overnight to defendant, who then took control over the funds. Trudniak did not have control over the funds. Sinklear further explained that when she received the checks, she would either forward them to defendant or keep them for defendant to pick up. Sinklear was only responsible for depositing checks into defendant's accounts for a very brief time at the request of defendant.
Trudniak and Sinklear also testified that once homeowners had signed a contract and turned over an insurance check, it was solely defendant's responsibility to hire subcontractors to complete the repairs and to purchase materials. There was no evidence that subcontractors were hired or materials purchased for the incomplete repairs to the properties belonging to Mr. and Mrs. Roberts, Ms. Allen, or Ms. Briggs.
At the direction of defendant, the homeowners were told repairs would be commenced within weeks. Months later, the repairs had not begun or were incomplete and the homeowners began to complain. Trudniak testified that he received similar complaints from homeowners in South Carolina who had signed contracts with Hail Strike prior to the homeowners in Guilford County. The repairs on their properties also had not commenced months after contracts were signed. When customers complained, Trudniak and Sinklear relayed the complaints to defendant. They contacted defendant many times regarding the homeowners' complaints. Defendant assured them that he had a contractor and the work would be done. After many complaints and no progress on the repairs, Trudniak eventually told Ms. Allen that he did not think defendant was going to do the work. Trudniak testified that he was expressing his personal opinion.
Trudniak's testimony also indicated that defendant's primary concern was money. Trudniak testified that defendant was always pushing to maximize insurance claims by seeking the approval of supplemental repairs. When Trudniak raised concern about a particular homeowner signing a contract for roof repairs because there was structural damage to the property that would prohibit the roof repairs from being made, Trudniak recalled that defendant stated, "we will take their money all day long[.]" Trudniak testified that defendant fired him thereafter.
At the time of the trial, Hail Strike had yet to complete the repairs. Defendant never explained to the homeowners why the repairs had not been completed. The homeowners' telephone calls to Hail Strike's office went unanswered. The homeowners were never refunded any of the insurance money.
Considering this evidence in the light most favorable to the State, we hold the circumstantial evidence is sufficient to support a reasonable inference that, at the time of contracting to work and accepting payment, defendant did not intend to complete the repairs. Therefore, the trial court did not err in denying defendant's motions to dismiss the charges. In so holding, we note that this Court has considered the fact that multiple victims have suffered under common circumstances when determining if there is substantial evidence of an intent to cheat or defraud. See Barfield , 127 N.C. App. at 402, 489 S.E.2d at 908 (explaining that there was sufficient evidence to support "a reasonable inference [the] defendant falsely represented he would move [a] house" based on "the testimony of two other witnesses who contracted with [the] defendant and obtained the same results[ ]").
III. Conclusion
For the reasons discussed, we uphold defendant's convictions and the judgments entered.
NO ERROR.
Report per Rule 30(e).
Judges DILLON and MURPHY concur.

Defendant's middle name appears in the record as both "Philip" and "Phillip."

Defendant later signed the waiver on 12 December 2017 and the information with waiver was filed on 18 December 2017.