IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-313

Filed: 19 May 2020

Chatham County, No. 17 CRS 050502

STATE OF NORTH CAROLINA

v.

DAQUEZZ SEMAJ HAUSER, Defendant.

Appeal by Defendant from judgment entered 3 October 2018 by Judge G. Bryan Collins, Jr. in Chatham County Superior Court. Heard in the Court of Appeals 2 October 2019.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Victoria L. Voight, for the State.*

*Erica W. Washington for defendant-appellant.*

MURPHY, Judge.

A trial court abuses its discretion when its ruling "is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988). Defendant fails to show the court abused its discretion in denying his motion for a mistrial following the inadvertent display of an image to the jury that bore similarity to one which had been excluded from evidence. We evaluate the prejudicial effect of the erroneous evidence by considering the "nature of the

evidence and the circumstances of the particular case." *State v. Aldridge*, 254 N.C. 297, 300, 118 S.E.2d 766, 768 (1961). In light of the nature of the erroneously displayed photograph, the trial court did not err in instructing the jury to disregard the image instead of declaring a mistrial.

However, we remand for correction of a clerical error in the written judgment to reflect a sentence of intermediate punishment, rather than community punishment, consistent with the trial court's intermediate punishments, as pronounced in Defendant's presence.

## BACKGROUND

Daquezz Semaj Hauser, Defendant, was indicted for obtaining property by false pretenses by selling boxes purportedly containing iPhones that contained only lug nuts. At trial, the State attempted to introduce State's Exhibit 17, a photograph of Defendant taken from his personal Facebook page. The photograph depicted Defendant posing expressionless with three cell phones. Defendant objected to the admission of the photograph and the trial court sustained the objection, having applied the Rule 403 balancing test. The State then sought to introduce State's Exhibit 18, which included photographs of the vehicles of both Defendant and the individuals who had sought to purchase phones from him. Exhibit 18 was admitted without objection.

However, in attempting to publish Exhibit 18 on the courtroom's overhead video display to the jury, the desktop screen of the State was shown instead. The desktop screen displayed a picture of Defendant holding several phones, wearing gold necklaces, and standing in front of a mirror. The prosecutor's screen was visible for several seconds before being removed. At the bench conference that followed, Defendant moved for a mistrial based on the potentially prejudicial nature of the photograph and its similarity to State's Exhibit 17, which had been ruled inadmissible shortly before. The trial court denied the mistrial request but instructed the jury to "disregard anything that might have flashed up on the screen right then."

Defendant was found guilty of obtaining property by false pretenses and sentenced to a suspended sentence of 6 to 17 months, with 36 months probation. An 89-day active term was imposed as a special condition of Defendant's suspended sentence. Defendant appealed and later requested to amend the Record to include a more complete narrative regarding the projection of the desktop screen and the bench conference that followed. The trial court subsequently granted that motion, pursuant to N.C. R. App. P. 11(c), and agreed with Defendant's narrative summary.

## ANALYSIS

### A. Mistrial

"The decision to grant or deny a mistrial rests within the sound discretion of the trial court and will be reversed on appeal only upon a clear showing that the trial court abused its discretion." *State v. Hurst*, 360 N.C. 181, 188, 624 S.E.2d 309, 316 (2006) (internal quotation marks omitted). "A mistrial should be granted only when there are improprieties in the trial so serious that they substantially and irreparably prejudice the defendant's case and make it impossible for the defendant to receive a fair and impartial verdict." *State v. Warren*, 327 N.C. 364, 376, 395 S.E.2d 116, 123 (1990); N.C.G.S. § 15A-1061 (2019). "[A] trial court's decision concerning a motion for mistrial will not be disturbed on appeal unless there is a clear showing that the trial court abused its discretion." *State v. Bonney*, 329 N.C. 61, 73, 405 S.E.2d 145, 152 (1991). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Hennis*, 323 N.C. at 285, 372 S.E.2d at 527. "The trial court's decision in this regard is to be afforded great deference since the trial court is in a far better position than an appellate court to determine whether the degree of influence on the jury was irreparable." *State v. King*, 343 N.C. 29, 44, 468 S.E. 2d 232, 242 (1996).

"Our system of justice is based upon the assumption that trial jurors are women and men of character and of sufficient intelligence to fully understand and comply with the instructions of the court, and are presumed to have done so." *State*

*v. Hines*, 131 N.C. App. 457, 462, 508 S.E.2d 310, 314 (1998) (internal quotation marks and citations omitted). Accordingly, when a trial court acknowledges an evidentiary error "and instructs the jury to disregard it, the refusal to grant a mistrial based on the introduction of the evidence will ordinarily not constitute an abuse of discretion." *State v. Barts*, 316 N.C. 666, 684, 343 S.E.2d 828, 840 (1986); *see State v. Upchurch*, 332 N.C. 439, 450, 421 S.E.2d 577, 583 (1992) (stating that "[w]hen a court properly instructs jurors not to consider certain statements, any prejudice is ordinarily cured"). Indeed, we "have generally held that where inadmissible evidence is published to the jury, a trial court may cure this error by instructing the jury not to consider that specific evidence." *Hines*, 131 N.C. App. at 462-63, 508 S.E.2d at 314.

However, a trial court abuses its discretion by not granting a mistrial when the jurors cannot recall which information they must exclude from their consideration, whether due to the large amount of evidence at issue, the insufficiently detailed cautionary instruction itself, or a combination of the two. *Id.* In *Hines*, we held that a jury must be able to differentiate the improper evidence from proper evidence, and that a mistrial is appropriate when the jury cannot do so. *Id.,* 131 N.C. App. at 463-464, 508 S.E.2d at 314-315. Additionally, a trial court's instruction must clearly and completely identify the evidence that the jury must

disregard, and failure to so instruct is error. *Id.* While these factors were present in *Hines*, neither are present in this case.

By contrast, a trial court does not abuse its discretion upon "immediate and thorough curative action taken by the trial court" to clearly and completely identify the evidence the jury must disregard. *Barts*, 316 N.C. at 684, 343 S.E.2d at 840. In *Barts*, the Supreme Court held that a single, discrete incident of improper testimony where multiple robbery "jobs" were referenced, instead of just one, could be cured. *Id.* There, the trial court asked the jury if they could disregard the improper testimony and all jurors responded affirmatively. *Id.*

"In some cases, however, the cautionary admonitions of the trial judge are ineffective to erase from the minds of a jury the effects of prejudicial errors." *Hines,* 131 N.C. App. at 463, 508 S.E.2d at 314 (internal quotation marks omitted). "Whether the erroneous admission of . . . evidence . . . should be deemed cured and held nonprejudicial . . . depend[s] largely upon the nature of the evidence and the circumstances of the particular case." *Aldridge*, 254 N.C. at 300, 118 S.E.2d at 768.

Per *Aldridge,* we consider "the nature of the evidence and the circumstances" of Defendant's case, such as the nature of the evidence erroneously admitted and the principle issue in contention at Defendant's trial. *Id.* Here, Defendant was indicted and convicted of obtaining property by false pretenses. At trial, "a key element of [obtaining property by false pretenses was] that [Defendant's]

representation [to the victims was] intentionally false and deceptive." *State v. Compton*, 90 N.C. App. 101, 103, 367 S.E.2d 353, 354 (1988). "A person's intent is seldom provable by direct evidence, and must usually be shown through circumstantial evidence." *Compton*, 90 N.C. App. at 104, 367 S.E.2d at 355. For instance, in a case where the defendant obtained insurance proceeds by false pretenses, we held the defendant's failure to respond to her insurance company and failure to attend or reschedule an examination "raised a reasonable inference as to her awareness that her claims were fraudulent." *State v. Holanek*, 242 N.C. App. 633, 651, 776 S.E.2d 225, 238 (2015).

As in *Holanek*, the present case included enough evidence for a reasonable inference that Defendant was aware his claims were fraudulent. Prior to the transactions taking place, Defendant had been in regular communication with the victims through Facebook and text message regarding the sales but immediately ceased all contact once the transactions had taken place. As a condition of each sale, Defendant forbade the purchasers from opening the boxes prior to his receiving payment and he left the premises (running in one case) before the boxes were opened. The circumstantial evidence of Defendant's behavior "raised a reasonable inference as to [his] awareness" that his actions were fraudulent. *Id*.

In considering the nature of the erroneous evidence, we look to the Record. The trial court approved the following "appropriate and factually accurate" narrative:

> . . . During [Defendant]'s trial, the prosecutor offered State's Exhibit 18, a photo of the vehicle [Defendant] drove, into evidence without objection. The prosecutor then moved to publish Exhibit 18 to the jury using the courtroom's overhead video display. (Tp. 303). The Court video system displays to a large screen that is in view of the jury, and on a smaller screen in front of defense counsel and the judge. The Court granted the prosecutor's motion to publish Exhibit 18 (Tp. 303). The prosecutor, unable to locate a digital copy of Exhibit 18, displayed her desktop file explorer screen to the jury instead.
>
> *Her desktop file screen displayed an image of [Defendant] with several phones in hand, wearing gold necklaces, and standing in front of a mirror. Three minutes earlier, the Court had not allowed State's Exhibit 17, a very similar image, into evidence based upon a Rule 403 analysis.* (See Tp. 301). (emphasis added).
>
> Once defense counsel noticed the image displayed, an objection was made. At 10:43:50 the prosecutor apologized and the screen display was disconnected. (Tp. 303). A bench conference was held off the record and out of the hearing of the jury. Defense counsel contended at the bench conference that the photo and the list of descriptive file names on the desktop screen were prejudicial to [Defendant] and counsel moved for a mistrial. The Court denied that motion. Following the conference, the Court gave the jury a limiting instruction, telling them to "disregard anything that might have flashed up on the screen right then." (Tp. 304).

The Record does not contain an image of the desktop screen, but the transcript is in accord with the Record Supplement's narrative:

[Prosecutor]: Did -- but you also looked through his Facebook page; is that right?

[Detective]: Yes.

[Prosecutor]: And found some images?

[Defense]: Objection.

THE COURT: Approach the bench. Let me see those while we are at it.

(A bench conference was held off the record and out of the hearing of the jury . . . .)

THE COURT: All right. Under a Rule 403 analysis, the State's proffer of [Exhibit 17] is not allowed. The defendant's objection is sustained . . . [.] All right.

. . .

[Prosecutor]: Your Honor, I offer State's Exhibit Number 18 and ask that it be published.

[Defense]: No objection.

THE COURT: Without objection let it be received, and motion to publish is allowed.

(State's Exhibit Number 18 was received into evidence.)

[Defense]: Your Honor, objection.

[Prosecutor]: Oh, sorry.

[Defense]: May we approach?

[Prosecutor]: Sorry, Your Honor. I am unable to locate it on the system. So if I could just stand before the jury.

THE COURT: Yes, you can approach. Hang on.

THE COURT: Ladies and gentlemen, *disregard anything that might have flashed up on the screen right then*. All right. (emphasis added).

The nature of the evidence and circumstances of Defendant's case bear similarities to both *Barts* and *Hines*, but in effect, are more easily distinguished. The circumstances are most similar to *Hines* as inadmissible evidence was inadvertently published to the jury; however, unlike the jury in *Hines,* the jury here did not face the same "impossible task" of distinguishing among forty documents and deciding what to remember and what to disregard. *Hines*, 131 N.C. App. at 462-463, 508 S.E.2d at 314. Unlike the jury in *Hines,* this jury only had to disregard one image displayed for several seconds; additionally, the trial court told them to disregard it—a <u>possible</u> task. The jurors could "fully understand and comply with the instructions of the court, and are presumed to have done so." *Id.* Moreover, unlike in *Hines,* we do not have a second independent piece of inadmissible evidence "inadvertently published to the jury" that lacked a limiting instruction. *Id.* Closer to *Barts*, the trial court here took "immediate . . . curative action" to quarantine all inadmissible evidence. *Barts*, 316 N.C. at 684, 343 S.E.2d at 840.

To be sure, unlike *Barts*, the trial court here did not ask and confirm whether the jury could follow its instruction. Disregarding a single image is not as indelible as disregarding a witness's testimony about multiple robbery "jobs" when told only

to consider the witness's testimony about a single "job." The trial court did not abuse its discretion by issuing just a curative instruction to address any resulting prejudice to Defendant from the inadvertent showing of the picture.

Defendant also asserts "[t]he State sought to play on a racial trope in order to fill [this hole and other] holes in their case" by flashing an image "that could evoke negative racial associations in the viewer." "Whether direct racial slurs, or indirect appeals to racial prejudice, when a prosecutor seeks to invoke a jury's racial biases to obtain a conviction, such statements are improper." *State v. Copley,* 839 S.E.2d 726 (N.C. 2020) (Earls, J., concurring). However, the inadvertent display of an allegedly prejudicial desktop screen is not equivalent to a prosecutor's intentional appeal to a jury's emotions via improper and clear reference to a defendant's race. There were no arguments or references made to any aspect of this photograph either directly or indirectly by the State. We see no evidence to support the State having used the inadvertent display of the desktop screen to fill a hole in its case or to interject race into the trial.

Defendant also contends the nature of the photograph itself had the potential to evoke "negative racial associations" upon being viewed by the jury. We likewise see no evidence that that was the case or find the photograph to be prejudicial based on race.

After considering the nature of the evidence and the circumstances of this case, Defendant has not overcome the presumption that the jury was able to understand and comply with the trial court's limiting instruction. It remained possible for him to receive a fair and impartial verdict. The trial court's ruling was not manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision. Accordingly, the trial court did not abuse its discretion.

## B. Clerical Error

Defendant argues the trial court imposed community punishment in accordance with N.C.G.S. § 15A-1340.17(c); thus, Defendant contends the sentence of 36 months supervised probation was erroneous under N.C.G.S. § 15A-1343.2 (d)(3). The State argues Defendant was sentenced to an intermediate punishment, in accordance with N.C.G.S. § 15A-1340.17(c), as reflected in both the sentencing hearing transcript and the judgment, and further, the box checked "community punishment" instead of "intermediate punishment" was a clerical error.

"When [we are] confronted with statutory errors regarding sentencing issues, such errors are questions of law, and as such, are reviewed *de novo*." *State v. Allen*, 249 N.C. App. 376, 379, 790 S.E.2d 588, 591 (2016) (internal quotation marks and citations omitted). "When a defendant assigns error to the sentence imposed by the trial court our standard of review is whether [the] sentence is supported by evidence

introduced at the trial and sentencing hearing." *State v. Chivers*, 180 N.C. App. 275, 278, 636 S.E.2d 590, 593 (2006) (citation omitted); *see* N.C.G.S. § 15A-444(a1) (2019). A clerical error is "[a]n error resulting from a minor mistake or inadvertence, esp[ecially] in writing or copying something on the record, and not from judicial reasoning or determination." *State v. Jarman*, 140 N.C. App. 198, 202, 535 S.E.2d 875, 878 (2000) (citation omitted). "When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court for correction because of the importance that the record speak the truth." *State v. Smith*, 188 N.C. App. 842, 845, 656 S.E.2d 695, 696-97 (2008) (internal quotation marks and citation omitted).

In *Allen*, we remanded a sentencing error where the original written order indicated the defendant was sentenced to intermediate punishment, rather than community punishment. *Allen,* 249 N.C. App. at 382, 790 S.E. 2d at 592. We did so because the Record reflected the trial court and prosecutor both stated the plea agreement contained an assignment of community punishment, the trial court stated it was sentencing the defendant to community punishment and correctly stated the requirements for community punishment, the first page of the original written order assigned community punishment, and a 10-day jail sentence would be in compliance with community punishment requirements. *Allen*, 249 N.C. App. at

381-82, 790 S.E.2d at 592. A subsequent modified order was vacated because it reflected the clerical error in the original order. *Id.*

This Record reflects a similar error and we hold it was clerical. Based on his prior record level, Defendant was sentenced for a Class H felony at Level I, eligible to receive either intermediate or community punishment.[1] *See* N.C.G.S. § 15A-1340.17(c). The State requested intermediate punishment and Defendant requested community punishment.

The trial court manifested its decision for an intermediate punishment, sentencing Defendant to 36 months supervised probation[2] and an 89-day period of confinement, the bulk of which was to be served on weekends. The probation sentence was in excess of the community punishment maximum sentence of 30 months. N.C.G.S. § 15A-1343.2(d)(3). Defendant's sentence, an intermediate punishment, was also reflected in his judgment.

Defendant's split sentence was enumerated within the "Intermediate Punishments" section of the judgment and reflects what was specified in the sentencing hearing. By contrast, the "Community and Intermediate Probation Conditions" section has no such marks. The only indication regarding community punishment is a checkmark in the box for community punishment at the top of the

---

[1] Defendant was also eligible for an active sentence. N.C.G.S. § 15A-1340.17(c).
[2] The trial court pronounced Defendant's sentence of 36 months probation twice during sentencing.

judgment. When considering in total the sentencing hearing, the conditions imposed by the trial court in Defendant's presence, and the written judgment, we conclude the mark in the community punishment box was clerical error, "resulting from a minor mistake or inadvertence . . . and not from judicial reasoning or determination." *Jarman*, 140 N.C. App. at 202, 535 S.E.2d at 878. We remand to the trial court for correction.

## **CONCLUSION**

The trial court did not abuse its discretion by denying Defendant's motion for a mistrial. We remand for correction of a clerical error in the written judgment to be consistent with the trial court's imposed sentence.

NO ERROR IN PART; REMANDED FOR CORRECTION OF CLERICAL ERROR.

Judges ZACHARY and ARROWOOD concur.