IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-313

 Filed: 19 May 2020

Chatham County, No. 17 CRS 050502

STATE OF NORTH CAROLINA

 v.

DAQUEZZ SEMAJ HAUSER, Defendant.

 Appeal by Defendant from judgment entered 3 October 2018 by Judge G.

Bryan Collins, Jr. in Chatham County Superior Court. Heard in the Court of

Appeals 2 October 2019.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General
 Victoria L. Voight, for the State.

 Erica W. Washington for defendant-appellant.

 MURPHY, Judge.

 A trial court abuses its discretion when its ruling “is manifestly unsupported

by reason or is so arbitrary that it could not have been the result of a reasoned

decision.” State v. Hennis, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).

Defendant fails to show the court abused its discretion in denying his motion for a

mistrial following the inadvertent display of an image to the jury that bore

similarity to one which had been excluded from evidence. We evaluate the

prejudicial effect of the erroneous evidence by considering the “nature of the
 STATE V. HAUSER

 Opinion of the Court

evidence and the circumstances of the particular case.” State v. Aldridge, 254 N.C.

297, 300, 118 S.E.2d 766, 768 (1961). In light of the nature of the erroneously

displayed photograph, the trial court did not err in instructing the jury to disregard

the image instead of declaring a mistrial.

 However, we remand for correction of a clerical error in the written judgment

to reflect a sentence of intermediate punishment, rather than community

punishment, consistent with the trial court’s intermediate punishments, as

pronounced in Defendant’s presence.

 BACKGROUND

 Daquezz Semaj Hauser, Defendant, was indicted for obtaining property by

false pretenses by selling boxes purportedly containing iPhones that contained only

lug nuts. At trial, the State attempted to introduce State’s Exhibit 17, a photograph

of Defendant taken from his personal Facebook page. The photograph depicted

Defendant posing expressionless with three cell phones. Defendant objected to the

admission of the photograph and the trial court sustained the objection, having

applied the Rule 403 balancing test. The State then sought to introduce State’s

Exhibit 18, which included photographs of the vehicles of both Defendant and the

individuals who had sought to purchase phones from him. Exhibit 18 was admitted

without objection.

 -2-
 STATE V. HAUSER

 Opinion of the Court

 However, in attempting to publish Exhibit 18 on the courtroom’s overhead

video display to the jury, the desktop screen of the State was shown instead. The

desktop screen displayed a picture of Defendant holding several phones, wearing

gold necklaces, and standing in front of a mirror. The prosecutor’s screen was

visible for several seconds before being removed. At the bench conference that

followed, Defendant moved for a mistrial based on the potentially prejudicial nature

of the photograph and its similarity to State’s Exhibit 17, which had been ruled

inadmissible shortly before. The trial court denied the mistrial request but

instructed the jury to “disregard anything that might have flashed up on the screen

right then.”

 Defendant was found guilty of obtaining property by false pretenses and

sentenced to a suspended sentence of 6 to 17 months, with 36 months probation. An

89-day active term was imposed as a special condition of Defendant’s suspended

sentence. Defendant appealed and later requested to amend the Record to include a

more complete narrative regarding the projection of the desktop screen and the

bench conference that followed. The trial court subsequently granted that motion,

pursuant to N.C. R. App. P. 11(c), and agreed with Defendant’s narrative summary.

 ANALYSIS

 A. Mistrial

 -3-
 STATE V. HAUSER

 Opinion of the Court

 “The decision to grant or deny a mistrial rests within the sound discretion of

the trial court and will be reversed on appeal only upon a clear showing that the

trial court abused its discretion.” State v. Hurst, 360 N.C. 181, 188, 624 S.E.2d 309,

316 (2006) (internal quotation marks omitted). “A mistrial should be granted only

when there are improprieties in the trial so serious that they substantially and

irreparably prejudice the defendant’s case and make it impossible for the defendant

to receive a fair and impartial verdict.” State v. Warren, 327 N.C. 364, 376, 395

S.E.2d 116, 123 (1990); N.C.G.S. § 15A-1061 (2019). “[A] trial court’s decision

concerning a motion for mistrial will not be disturbed on appeal unless there is a

clear showing that the trial court abused its discretion.” State v. Bonney, 329 N.C.

61, 73, 405 S.E.2d 145, 152 (1991). “Abuse of discretion results where the court’s

ruling is manifestly unsupported by reason or is so arbitrary that it could not have

been the result of a reasoned decision.” Hennis, 323 N.C. at 285, 372 S.E.2d at 527.

“The trial court's decision in this regard is to be afforded great deference since the

trial court is in a far better position than an appellate court to determine whether

the degree of influence on the jury was irreparable.” State v. King, 343 N.C. 29, 44,

468 S.E. 2d 232, 242 (1996).

 “Our system of justice is based upon the assumption that trial jurors are

women and men of character and of sufficient intelligence to fully understand and

comply with the instructions of the court, and are presumed to have done so.” State

 -4-
 STATE V. HAUSER

 Opinion of the Court

v. Hines, 131 N.C. App. 457, 462, 508 S.E.2d 310, 314 (1998) (internal quotation

marks and citations omitted). Accordingly, when a trial court acknowledges an

evidentiary error “and instructs the jury to disregard it, the refusal to grant a

mistrial based on the introduction of the evidence will ordinarily not constitute an

abuse of discretion.” State v. Barts, 316 N.C. 666, 684, 343 S.E.2d 828, 840 (1986);

see State v. Upchurch, 332 N.C. 439, 450, 421 S.E.2d 577, 583 (1992) (stating that

“[w]hen a court properly instructs jurors not to consider certain statements, any

prejudice is ordinarily cured”). Indeed, we “have generally held that where

inadmissible evidence is published to the jury, a trial court may cure this error by

instructing the jury not to consider that specific evidence.” Hines, 131 N.C. App. at

462-63, 508 S.E.2d at 314.

 However, a trial court abuses its discretion by not granting a mistrial when

the jurors cannot recall which information they must exclude from their

consideration, whether due to the large amount of evidence at issue, the

insufficiently detailed cautionary instruction itself, or a combination of the two. Id.

In Hines, we held that a jury must be able to differentiate the improper evidence

from proper evidence, and that a mistrial is appropriate when the jury cannot do so.

Id., 131 N.C. App. at 463-464, 508 S.E.2d at 314-315. Additionally, a trial court’s

instruction must clearly and completely identify the evidence that the jury must

 -5-
 STATE V. HAUSER

 Opinion of the Court

disregard, and failure to so instruct is error. Id. While these factors were present in

Hines, neither are present in this case.

 By contrast, a trial court does not abuse its discretion upon “immediate and

thorough curative action taken by the trial court” to clearly and completely identify

the evidence the jury must disregard. Barts, 316 N.C. at 684, 343 S.E.2d at 840. In

Barts, the Supreme Court held that a single, discrete incident of improper

testimony where multiple robbery “jobs” were referenced, instead of just one, could

be cured. Id. There, the trial court asked the jury if they could disregard the

improper testimony and all jurors responded affirmatively. Id.

 “In some cases, however, the cautionary admonitions of the trial judge are

ineffective to erase from the minds of a jury the effects of prejudicial errors.” Hines,

131 N.C. App. at 463, 508 S.E.2d at 314 (internal quotation marks omitted).

“Whether the erroneous admission of . . . evidence . . . should be deemed cured and

held nonprejudicial . . . depend[s] largely upon the nature of the evidence and the

circumstances of the particular case.” Aldridge, 254 N.C. at 300, 118 S.E.2d at 768.

 Per Aldridge, we consider “the nature of the evidence and the circumstances”

of Defendant’s case, such as the nature of the evidence erroneously admitted and

the principle issue in contention at Defendant’s trial. Id. Here, Defendant was

indicted and convicted of obtaining property by false pretenses. At trial, “a key

element of [obtaining property by false pretenses was] that [Defendant’s]

 -6-
 STATE V. HAUSER

 Opinion of the Court

representation [to the victims was] intentionally false and deceptive.” State v.

Compton, 90 N.C. App. 101, 103, 367 S.E.2d 353, 354 (1988). “A person’s intent is

seldom provable by direct evidence, and must usually be shown through

circumstantial evidence.” Compton, 90 N.C. App. at 104, 367 S.E.2d at 355. For

instance, in a case where the defendant obtained insurance proceeds by false

pretenses, we held the defendant’s failure to respond to her insurance company and

failure to attend or reschedule an examination “raised a reasonable inference as to

her awareness that her claims were fraudulent.” State v. Holanek, 242 N.C. App.

633, 651, 776 S.E.2d 225, 238 (2015).

 As in Holanek, the present case included enough evidence for a reasonable

inference that Defendant was aware his claims were fraudulent. Prior to the

transactions taking place, Defendant had been in regular communication with the

victims through Facebook and text message regarding the sales but immediately

ceased all contact once the transactions had taken place. As a condition of each

sale, Defendant forbade the purchasers from opening the boxes prior to his receiving

payment and he left the premises (running in one case) before the boxes were

opened. The circumstantial evidence of Defendant’s behavior “raised a reasonable

inference as to [his] awareness” that his actions were fraudulent. Id.

 -7-
 STATE V. HAUSER

 Opinion of the Court

 In considering the nature of the erroneous evidence, we look to the Record.

The trial court approved the following “appropriate and factually accurate”

narrative:

 . . . During [Defendant]’s trial, the prosecutor offered
 State’s Exhibit 18, a photo of the vehicle [Defendant]
 drove, into evidence without objection. The prosecutor
 then moved to publish Exhibit 18 to the jury using the
 courtroom’s overhead video display. (Tp. 303). The Court
 video system displays to a large screen that is in view of
 the jury, and on a smaller screen in front of defense
 counsel and the judge. The Court granted the prosecutor’s
 motion to publish Exhibit 18 (Tp. 303). The prosecutor,
 unable to locate a digital copy of Exhibit 18, displayed her
 desktop file explorer screen to the jury instead.

 Her desktop file screen displayed an image of [Defendant]
 with several phones in hand, wearing gold necklaces, and
 standing in front of a mirror. Three minutes earlier, the
 Court had not allowed State’s Exhibit 17, a very similar
 image, into evidence based upon a Rule 403 analysis. (See
 Tp. 301). (emphasis added).

 Once defense counsel noticed the image displayed, an
 objection was made. At 10:43:50 the prosecutor apologized
 and the screen display was disconnected. (Tp. 303). A
 bench conference was held off the record and out of the
 hearing of the jury. Defense counsel contended at the
 bench conference that the photo and the list of descriptive
 file names on the desktop screen were prejudicial to
 [Defendant] and counsel moved for a mistrial. The Court
 denied that motion. Following the conference, the Court
 gave the jury a limiting instruction, telling them to
 “disregard anything that might have flashed up on the
 screen right then.” (Tp. 304).

The Record does not contain an image of the desktop screen, but the transcript is in

accord with the Record Supplement’s narrative:

 -8-
 STATE V. HAUSER

 Opinion of the Court

[Prosecutor]: Did -- but you also looked through his
Facebook page; is that right?

[Detective]: Yes.

[Prosecutor]: And found some images?

[Defense]: Objection.

THE COURT: Approach the bench. Let me see those
while we are at it.

(A bench conference was held off the record and out of the
 hearing of the jury . . . .)

THE COURT: All right. Under a Rule 403 analysis, the
State’s proffer of [Exhibit 17] is not allowed. The
defendant’s objection is sustained . . . [.] All right.

...

[Prosecutor]: Your Honor, I offer State’s Exhibit
Number 18 and ask that it be published.

[Defense]: No objection.

THE COURT: Without objection let it be received, and
motion to publish is allowed.

 (State’s Exhibit Number 18 was received into evidence.)

[Defense]: Your Honor, objection.

[Prosecutor]: Oh, sorry.

[Defense]: May we approach?

[Prosecutor]: Sorry, Your Honor. I am unable to locate it
on the system. So if I could just stand before the jury.

 -9-
 STATE V. HAUSER

 Opinion of the Court

 THE COURT: Yes, you can approach. Hang on.

 THE COURT: Ladies and gentlemen, disregard anything
 that might have flashed up on the screen right then. All
 right. (emphasis added).

 The nature of the evidence and circumstances of Defendant’s case bear

similarities to both Barts and Hines, but in effect, are more easily distinguished.

The circumstances are most similar to Hines as inadmissible evidence was

inadvertently published to the jury; however, unlike the jury in Hines, the jury here

did not face the same “impossible task” of distinguishing among forty documents

and deciding what to remember and what to disregard. Hines, 131 N.C. App. at

462-463, 508 S.E.2d at 314. Unlike the jury in Hines, this jury only had to

disregard one image displayed for several seconds; additionally, the trial court told

them to disregard it—a possible task. The jurors could “fully understand and

comply with the instructions of the court, and are presumed to have done so.” Id.

Moreover, unlike in Hines, we do not have a second independent piece of

inadmissible evidence “inadvertently published to the jury” that lacked a limiting

instruction. Id. Closer to Barts, the trial court here took “immediate . . . curative

action” to quarantine all inadmissible evidence. Barts, 316 N.C. at 684, 343 S.E.2d

at 840.

 To be sure, unlike Barts, the trial court here did not ask and confirm whether

the jury could follow its instruction. Disregarding a single image is not as indelible

as disregarding a witness’s testimony about multiple robbery “jobs” when told only

 - 10 -
 STATE V. HAUSER

 Opinion of the Court

to consider the witness’s testimony about a single “job.” The trial court did not

abuse its discretion by issuing just a curative instruction to address any resulting

prejudice to Defendant from the inadvertent showing of the picture.

 Defendant also asserts “[t]he State sought to play on a racial trope in order to

fill [this hole and other] holes in their case” by flashing an image “that could evoke

negative racial associations in the viewer.” “Whether direct racial slurs, or indirect

appeals to racial prejudice, when a prosecutor seeks to invoke a jury’s racial biases

to obtain a conviction, such statements are improper.” State v. Copley, 839 S.E.2d

726 (N.C. 2020) (Earls, J., concurring). However, the inadvertent display of an

allegedly prejudicial desktop screen is not equivalent to a prosecutor’s intentional

appeal to a jury’s emotions via improper and clear reference to a defendant’s race.

There were no arguments or references made to any aspect of this photograph

either directly or indirectly by the State. We see no evidence to support the State

having used the inadvertent display of the desktop screen to fill a hole in its case or

to interject race into the trial.

 Defendant also contends the nature of the photograph itself had the potential

to evoke “negative racial associations” upon being viewed by the jury. We likewise

see no evidence that that was the case or find the photograph to be prejudicial based

on race.

 - 11 -
 STATE V. HAUSER

 Opinion of the Court

 After considering the nature of the evidence and the circumstances of this

case, Defendant has not overcome the presumption that the jury was able to

understand and comply with the trial court’s limiting instruction. It remained

possible for him to receive a fair and impartial verdict. The trial court’s ruling was

not manifestly unsupported by reason or so arbitrary that it could not have been the

result of a reasoned decision. Accordingly, the trial court did not abuse its

discretion.

 B. Clerical Error

 Defendant argues the trial court imposed community punishment in

accordance with N.C.G.S. § 15A-1340.17(c); thus, Defendant contends the sentence

of 36 months supervised probation was erroneous under N.C.G.S. § 15A-1343.2

(d)(3). The State argues Defendant was sentenced to an intermediate punishment,

in accordance with N.C.G.S. § 15A-1340.17(c), as reflected in both the sentencing

hearing transcript and the judgment, and further, the box checked “community

punishment” instead of “intermediate punishment” was a clerical error.

 “When [we are] confronted with statutory errors regarding sentencing issues,

such errors are questions of law, and as such, are reviewed de novo.” State v. Allen,

249 N.C. App. 376, 379, 790 S.E.2d 588, 591 (2016) (internal quotation marks and

citations omitted). “When a defendant assigns error to the sentence imposed by the

trial court our standard of review is whether [the] sentence is supported by evidence

 - 12 -
 STATE V. HAUSER

 Opinion of the Court

introduced at the trial and sentencing hearing.” State v. Chivers, 180 N.C. App.

275, 278, 636 S.E.2d 590, 593 (2006) (citation omitted); see N.C.G.S. § 15A-444(a1)

(2019). A clerical error is “[a]n error resulting from a minor mistake or

inadvertence, esp[ecially] in writing or copying something on the record, and not

from judicial reasoning or determination.” State v. Jarman, 140 N.C. App. 198, 202,

535 S.E.2d 875, 878 (2000) (citation omitted). “When, on appeal, a clerical error is

discovered in the trial court's judgment or order, it is appropriate to remand the

case to the trial court for correction because of the importance that the record speak

the truth.” State v. Smith, 188 N.C. App. 842, 845, 656 S.E.2d 695, 696-97 (2008)

(internal quotation marks and citation omitted).

 In Allen, we remanded a sentencing error where the original written order

indicated the defendant was sentenced to intermediate punishment, rather than

community punishment. Allen, 249 N.C. App. at 382, 790 S.E. 2d at 592. We did so

because the Record reflected the trial court and prosecutor both stated the plea

agreement contained an assignment of community punishment, the trial court

stated it was sentencing the defendant to community punishment and correctly

stated the requirements for community punishment, the first page of the original

written order assigned community punishment, and a 10-day jail sentence would be

in compliance with community punishment requirements. Allen, 249 N.C. App. at

 - 13 -
 STATE V. HAUSER

 Opinion of the Court

381-82, 790 S.E.2d at 592. A subsequent modified order was vacated because it

reflected the clerical error in the original order. Id.

 This Record reflects a similar error and we hold it was clerical. Based on his

prior record level, Defendant was sentenced for a Class H felony at Level I, eligible

to receive either intermediate or community punishment.1 See N.C.G.S. § 15A-

1340.17(c). The State requested intermediate punishment and Defendant requested

community punishment.

 The trial court manifested its decision for an intermediate punishment,

sentencing Defendant to 36 months supervised probation2 and an 89-day period of

confinement, the bulk of which was to be served on weekends. The probation

sentence was in excess of the community punishment maximum sentence of 30

months. N.C.G.S. § 15A-1343.2(d)(3). Defendant’s sentence, an intermediate

punishment, was also reflected in his judgment.

 Defendant’s split sentence was enumerated within the “Intermediate

Punishments” section of the judgment and reflects what was specified in the

sentencing hearing. By contrast, the “Community and Intermediate Probation

Conditions” section has no such marks. The only indication regarding community

punishment is a checkmark in the box for community punishment at the top of the

 1 Defendant was also eligible for an active sentence. N.C.G.S. § 15A-1340.17(c).
 2 The trial court pronounced Defendant’s sentence of 36 months probation twice during
sentencing.

 - 14 -
 STATE V. HAUSER

 Opinion of the Court

judgment. When considering in total the sentencing hearing, the conditions

imposed by the trial court in Defendant’s presence, and the written judgment, we

conclude the mark in the community punishment box was clerical error, “resulting

from a minor mistake or inadvertence . . . and not from judicial reasoning or

determination.” Jarman, 140 N.C. App. at 202, 535 S.E.2d at 878. We remand to

the trial court for correction.

 CONCLUSION

 The trial court did not abuse its discretion by denying Defendant’s motion for

a mistrial. We remand for correction of a clerical error in the written judgment to

be consistent with the trial court’s imposed sentence.

 NO ERROR IN PART; REMANDED FOR CORRECTION OF CLERICAL

ERROR.

 Judges ZACHARY and ARROWOOD concur.

 - 15 -